UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X
                                      :

SAN ANTONIO FIRE AND POLICE PENSION FUND, :
*individually and on behalf of all others similarly situated*, :
                                      :

                     Plaintiff,         :                 22 Civ. 6339 (JPC)

                                       :

         -v-                            :

                                       :

DENTSPLY SIRONA INC., *et al.*,             :

                                       :

                  Defendants.      :

                                       :

----------------------------------------------------------------------X
                                       :

CITY OF MIAMI GENERAL EMPLOYEES' & :
SANITATION EMPLOYEES' RETIREMENT TRUST, :
*on behalf of itself and all others similarly situated*, :
                                       :

                                       :                 23 Civ. 2910 (JPC)

                     Plaintiff,         :

                                       :        OPINION AND ORDER

         -v-                            :

                                       :

DONALD M. CASEY, JR. *et al.*,              :

                                       :

                  Defendants.      :

                                       :

----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      In this securities fraud action, one individual entity and two groups of entities have moved for Lead Plaintiff appointment: the San Antonio Fire and Police Pension Fund ("San Antonio"); a group consisting of the City of Miami General Employees' & Sanitation Employees' Retirement Trust ("Miami") and the Louisiana Sheriffs' Pension & Relief Fund ("Louisiana Sheriffs"); and a group consisting of the City of Birmingham Retirement and Relief System ("Birmingham"), the El Paso Firemen & Policemen's Pension Fund ("El Paso"), and the Wayne County Employees' Retirement System ("Wayne County"). Each entity or group of entities further moves for its counsel to be appointed Lead Counsel. For reasons that follow, the Court appoints Birmingham,

El Paso, and Wayne County as Lead Plaintiffs, and appoints their counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), as Lead Counsel.

## I. Background

The Complaints in these two putative class actions allege that a publicly traded corporation, Defendant Dentsply Sirona Inc. ("Dentsply"), and two of its former executives, Defendants Donald M. Casey, Jr. and Jorge Gomez (the "Individual Defendants"), violated the Securities Exchange Act of 1934, as amended (the "Exchange Act"), 15 U.S.C. §§ 78a-78rr, by improperly recognizing Dentsply's revenue so that its financial performance would trigger payment to the Individual Defendants of incentive-based compensation for the second half of 2021. *San Antonio*, Dkt. 1 ("*San Antonio* Compl.") ¶¶ 1-16; *City of Miami*, Dkt. 1 ("*City of Miami* Compl.") ¶¶ 1-10.[1] *City of Miami General Employees' & Sanitation Employees' Retirement Trust v. Casey*, No. 23 Civ. 2910 (JPC) (S.D.N.Y.), was filed in the Southern District of Ohio on June 2, 2022. That same date, the law firm of Bernstein Litowitz Berger & Grossman LLP ("Bernstein Litowitz"), counsel to Miami, issued a press release through the newswire service, Business Wire, announcing that the action had been filed and describing the allegations made therein. *City of Miami*, Dkt. 12-6. As explained in that press release, any member of the putative class on whose behalf the action was brought had the right to move the Court for appointment as Lead Plaintiff by the first business day at least sixty days after the publication of the press release—*i.e.*, by August 1, 2022. *Id.* at 3; *see* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). *San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*, No. 22 Civ. 6339 (JPC) (S.D.N.Y.), was filed in this District on July 26, 2022. That same date, the law firm of Bleichmar Fonti & Auld LLP ("Bleichmar Fonti"), counsel to San Antonio, issued a press release through the newswire service, ACCESSWIRE, announcing that the action had been filed

---

[1] To distinguish citations to filings in these two cases, a shortened version of the case name will precede the docket number.

2

and describing the allegations made therein. *San Antonio*, Dkt. 7-3. As explained in the press release, any member of the purported class was able to move the Court for appointment as Lead Plaintiff at any time by the first business day at least sixty days after the publication of the press release in *City of Miami*. *Id.* at 2. As noted, that deadline was August 1, 2022. *Id.*

Three pairs of motions were filed in the two actions before that deadline. One pair of motions sought the appointment of San Antonio as Lead Plaintiff and the appointment of Bleichmar Fonti as Lead Counsel. *San Antonio*, Dkts. 5-8; *City of Miami*, Dkt. 11. Another sought the joint appointment of Miami and Louisiana Sheriffs as Lead Plaintiffs and the appointment of Bernstein Litowitz as Lead Counsel. *San Antonio*, Dkts. 9, 10 ("Miami *et al.* Br."), 11-12; *City of Miami*, Dkt. 12. The third sought the joint appointment of Birmingham, El Paso, and Wayne County as Lead Plaintiffs, and the appointment of Robbins Geller as Lead Counsel. *San Antonio*, Dkts. 13-16; *City of Miami*, Dkt. 8. Each movant subsequently opposed the motions filed by the two competing movants, *San Antonio*, Dkts. 18, 19 ("Miami *et al.* Opp."), 20, 21 ("San Antonio Opp."), 22; *City of Miami*, Dkts. 16-18, and replied in support of its own motion, *San Antonio*, Dkts. 32 ("Birmingham *et al.* Reply"), 33 ("Miami *et al.* Reply"), 34-36; *City of Miami*, Dkts. 26-28.[2]

## II. Discussion

### A. Lead Plaintiff

In a class action arising under the Exchange Act, a district court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members," whom the law refers to as

---

[2] On March 27, 2023, the Honorable Sarah D. Morrison, United States District Judge for the Southern District of Ohio, to whom *City of Miami* was then assigned, granted San Antonio's motion to intervene and to transfer venue of that action to this District. *City of Miami*, Dkt. 35. Because *City of Miami* was the first-filed action, this Court stayed *San Antonio* pending resolution of the motion to transfer venue. *San Antonio*, Dkt. 51. After its transfer to this District, *City of Miami* was designated as related to *San Antonio* and assigned to the undersigned. *See City of Miami*, May 3, 2023 Minute Entry.

the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i). That provision further sets forth the procedures that a court must employ in order to identify the most adequate plaintiff. Initially, the court must "adopt a presumption that the most adequate plaintiff" is the "person or group of persons" who satisfy three conditions. *Id.* § 78u-4(a)(3)(B)(iii)(I). First, the most adequate plaintiff must have either filed the complaint or moved for appointment as Lead Plaintiff. *Id*. § 78u-4(a)(3)(B)(iii)(I)(aa). Second, the most adequate plaintiff must, in the determination of the court, have the largest financial interest in the relief sought by the class. *Id*. § 78u-4(a)(3)(B)(iii)(I)(bb). Third, the most adequate plaintiff must otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. *Id*. § 78u-4(a)(3)(B)(iii)(I)(cc). Another member of the purported plaintiff class may rebut the presumption that the person or entity satisfying those three conditions is the most adequate plaintiff with "proof . . . that the presumptively most adequate plaintiff" either "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u-4(a)(3)(B)(iii)(II).

The Court finds that the movant group of Birmingham, El Paso, and Wayne County constitutes the presumptively most adequate plaintiff. No other movant has produced proof sufficient to overcome that presumption. Consequently, the Court grants the motion filed by Birmingham, El Paso, and Wayne County, denies the remaining two motions, and appoints Birmingham, El Paso, and Wayne County as Lead Plaintiffs.

### 1. Timeliness

The Exchange Act requires that "[n]ot later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published . . . a notice advising members of the purported plaintiff class" of, among other matters, the existence and subject matter of the action initiated by that complaint. *Id.* § 78u-4(a)(3)(A)(i). The Exchange Act further

provides that "not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." *Id.* § 78u-4(a)(3)(A)(i)(II). And when "more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter is filed, only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published in accordance with clause (i)." *Id.* § 78u-4(a)(3)(A)(ii). As mentioned, the required notice was published in *City of Miami* on June 2, 2022, *City of Miami*, Dkt. 12-6, the date on which the Complaint was filed in that case. Furthermore, because the claims asserted in *San Antonio* are substantially the same as those asserted in *City of Miami*, *compare San Antonio* Compl. ¶¶ 71-81, *with City of Miami* Compl. ¶¶ 46-56, notice was required to be published only in *City of Miami*, the first-filed action. The publication of notice on June 2, 2022 triggered a deadline to move for Lead Plaintiff appointment of August 1, 2022. All motions were filed on that date. *See San Antonio*, Dkts. 5, 9, 13; *City of Miami*, Dkts. 7-9. Each movant or group of movants therefore satisfies the first requirement to be presumed the most adequate plaintiff.

### 2. Financial Interest

The gravamen of the dispute between the movants centers on the second requirement of the most adequate plaintiff presumption. As mentioned, the presumptively most adequate plaintiff must have "the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). In assessing which proposed lead plaintiff has the largest financial interest, courts in this District typically consider the four so-called *Lax* factors: "(i) the gross number of shares purchased; (ii) the net number of shares purchased; (iii) the net funds spent; and (iv) the net loss suffered." *Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17 Civ. 6130 (LTS) (SN), 2017 WL 5256769, at *1 (S.D.N.Y. Nov. 13, 2017) (citing *Pirelli Armstrong Tire Corp. v. LeBranche & Co., Inc.*, 229 F.R.D. 395, 404-05 (S.D.N.Y. 2004)); *see Lax v. First Merch. Acceptance Corp.*, No. 97

Civ. 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997). The fourth factor—the net loss—is generally regarded as "the most compelling." *Nurlybaev*, 2017 WL 5256769, at *1 (citing *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 530 (S.D.N.Y. 2015)).

The movants disagree in two respects about how the Court should apply the *Lax* factors in this case. First, they disagree about whether the presumptively most adequate plaintiff is the individual person or entity with the largest financial interest in this action, or whether instead a group of persons or entities that collectively has the largest financial interest in this action may be the presumptively most adequate plaintiff even though another individual movant has a larger financial interest than any individual member of the group. While San Antonio urges the Court to apply the *Lax* factors based only on the individual entities' financial interests, the two groups moving for appointment as Lead Plaintiffs urge the Court to apply the factors based on their aggregate financial interests. *Compare* San Antonio Opp. at 3-13, *with* Birmingham *et al.* Reply at 7-10; Miami *et al.* Reply at 6-7. Second, the movants disagree about the proper interpretation of "net loss," which is the fourth *Lax* factor. While the movant group of Birmingham, El Paso, and Wayne County interprets net loss as pertaining to a movant's actual loss on its investment in Dentsply shares, as measured by the last-in, first-out ("LIFO") method, the movant group of Miami and Louisiana Sheriffs instead interprets net loss as pertaining to only that portion of a movant's loss that could be recovered in this action, and that group further proposes a method for measuring such recoverable loss. *Compare* Birmingham *et al.* Reply at 2-7, *with* Miami *et al.* Opp. at 5-10.

The Court first addresses whether the presumptively most adequate plaintiff must be the individual person or entity with the largest financial interest in the action, or whether instead the presumptively most adequate plaintiff may be a group of persons or entities with an aggregate financial interest larger than any other movant, even though some other individual movant has a larger financial interest than any individual member of the group. By its plain language, the

6

Exchange Act allows a "group of persons" to serve as lead plaintiff, without imposing any further statutory requirements on such a group. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see id.* § 78u-4(a)(3)(B)(iii)(I)(bb) (providing for a most adequate plaintiff presumption for "the person *or group of persons*" who, among other things, "has the largest financial interest in the relief sought by the class" (emphasis added)); *see also id.* § 78u-4(a)(3)(B)(i) (requiring the court to "appoint as lead plaintiff the member *or members* of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members" (emphasis added)). As the Exchange Act also makes clear, the inquiry turns on whether the group is "most capable of adequately representing the interests" of the class, applying the criteria set forth in the statute. *Id.* § 78u-4(a)(3)(B)(i); *cf. Cohen v. Luckin Coffee Inc.*, No. 20 Civ. 1293 (LJL), 2020 WL 3127808, at *3 (S.D.N.Y. June 12, 2020) ("The majority of courts, including those in this District . . . permit[] unrelated investors to join together as a group seeking lead-plaintiff status on a case-by-case basis, if such a grouping would best serve the class." (alterations in original) (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008))). Nor does the statute impose on a group seeking lead plaintiff appointment any greater showing with respect to its financial interest by virtue of its status as a group. *See Hansen v. Ferrellgas Partners, L.P.*, Nos. 16 Civ. 7840 (RJS), 16 Civ. 8850 (RJS), 16 Civ. 9294 (RJS), 2017 WL 281742, at *3 n.4 (S.D.N.Y. Jan. 19, 2017) ("Accordingly, to the extent decisions in this District suggest that the [Private Securities Litigation Reform Act] requires a greater showing from a group with the largest financial interest, the Court respectfully disagrees that the statute imposes such a rule." (internal citation omitted)). The Court therefore considers the most adequate plaintiff presumption by assessing the financial interest in this action possessed by the individual movant—*i.e.*, San Antonio—and the aggregate financial interests possessed by each of the group movants—*i.e.*, the group consisting of Miami and Louisiana Sheriffs, and the group consisting of Birmingham, El Paso, and Wayne

7

County—not by assessing the financial interests possessed by the individual entities within those groups.

Aggregating the financial interests of each group of movants makes clear that San Antonio does not satisfy the second requirement to be the presumptively most adequate plaintiff. Regardless of whether the Court employs the LIFO method or the recoverable loss method when applying the fourth *Lax* factor, no party claims that San Antonio's individual net loss was larger than the aggregate net loss of either of the two groups moving for appointment as Lead Plaintiffs. *San Antonio*, Dkt. 18 at 4; Miami *et al.* Opp. at 3; San Antonio Opp. at 14; *San Antonio*, Dkt. 35 at 10. Nor does any party claim that the remaining three *Lax* factors favor San Antonio over either of the two groups. *San Antonio*, Dkt. 18 at 4; Miami *et al.* Opp. at 3; San Antonio Opp. at 15-16. Thus, the movant with the largest financial interest in this action must be either the group consisting of Miami and Louisiana Sheriffs or the group consisting of Birmingham, El Paso, and Wayne County.

To determine which of the two groups has the greatest financial interest in this action, the Court must first identify the appropriate metric for assessing the fourth and most important of the *Lax* factors—the question of which movant suffered the greatest net loss. The group of Birmingham, El Paso, and Wayne County urges the Court to interpret net loss to mean the loss an investor actually suffered during the class period on its investments in Dentsply stock. Birmingham *et al.* Reply at 2-7. Each entity seeking appointment as Lead Plaintiff purchased a certain number of Dentsply shares during the class period; then, some sold some shares in full or in part during or immediately after the class period, while others sold no shares at all. *San Antonio*, Dkts. 7-4, 11-2, 15-4 (collectively, the "Movants' Share Charts"). Thus, under the commonly employed LIFO method, the actual loss suffered by each entity would equal the difference between the amount an investor paid for Dentsply shares purchased during the class period and the sum of (1) the amount it received for Dentsply shares sold during the class period, if any, and (2) the value of the remaining

8

shares held at the end of the class period, if any. That amount would be computed by first adding up the amounts a movant paid for each purchase of Dentsply shares during the class period and subtracting the amounts the movant received for each sale of Dentsply shares during the class period. Then, to compute the number of shares remaining at the end of the class period, the number of shares sold during the class period would be subtracted from the number of shares purchased during the class period. Lastly, the total value of those shares remaining at the end of the class period would be computed by multiplying the number of such shares by the value of a single Dentsply share at the end of the class period, and that total value would then also be subtracted from the total price paid by the movant for Dentsply shares purchased during the class period.[3] Applying this method, Birmingham, El Paso, and Wayne County suffered the greatest net loss. *See* Movants' Share Charts.

Although Birmingham, El Paso, and Wayne County suffered the greatest net loss on their investments in Dentsply stock during the class period, it does not necessarily follow that Birmingham, El Paso, and Wayne County stand to recover the most damages in this litigation. The Exchange Act permits recovery only if "the act complained of 'caused the loss for which the plaintiff seeks to recover damages.'" *Suez Equity Invs., L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 96 (2d Cir. 2001) (quoting 15 U.S.C. § 78u-4(b)(4)). While an investor may lose money over the course of the class period for many reasons, only those losses caused by the defendant's alleged

---

[3] Because the Exchange Act prohibits a plaintiff in a securities fraud action from recovering more than "the difference between the purchase . . . price paid . . . by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market," 15 U.S.C. § 78u-4(e)(1), the parties compute the value of the security at the end of the class period not simply as its price on that date but rather as the higher of its price on that date and its mean trading price during the 90-day period beginning on May 10, 2020, the date of the alleged disclosure of corrective information to the market. *See, e.g.*, *San Antonio* Compl. ¶¶ 52-53 (alleging the dissemination of corrective information on May 10, 2020); *San Antonio*, Dkt. 15-4 at 3 (computing losses for the Birmingham, El Paso, and Wayne County movant group using the 90-day average share price beginning on May 10, 2020).

fraud are recoverable.  Thus, even though during the class period one group of investors may have lost a greater total amount than another group, the latter group may stand to recover more damages in litigation if a greater proportion of its losses were caused by the defendant's alleged fraud.

In their opposition to Birmingham, El Paso, and Wayne County's motion, the group of Miami and Louisiana Sheriffs argues that the Court should apply the fourth *Lax* factor by ascertaining not which movant or group of movants suffered the greatest loss in total but rather by ascertaining which suffered the greatest loss recoverable in this litigation, Miami *et al.* Opp. at 6-8, and they propose a method of measuring each movant's recoverable loss, *id.* at 8-9.  The Complaints in both *San Antonio* and *City of Miami* allege that on April 19, 2022 and May 10, 2022, the disclosure of truthful information related to Dentsply's previous misrepresentations caused a decline in its share price.  *San Antonio* Compl. ¶¶ 50-58; *City of Miami* Compl. ¶¶ 32-33.  And because a securities fraud plaintiff can recover only for losses caused by a defendant's fraud, the Miami and Louisiana Sheriffs group argues, the losses that occurred on those dates are the only losses recoverable by class members in this case.  Miami *et al.* Opp. at 8.  On this approach, each movant's net loss would therefore equal the number of shares it held on each of those two dates multiplied by the share price decline on that date.  *Id.* at 8-9.  And based on this approach, Miami and Louisiana Sheriffs together suffered a greater net loss than Birmingham, El Paso, and Wayne County.  *Id.* at 9.  Thus, to apply the fourth *Lax* factor, the Court must determine which approach should be employed in measuring each movant's net loss.[4]

For three reasons, the Court will measure each movant's actual loss by applying the LIFO method, rather than employing Miami and Louisiana Sheriffs' proposed metric of recoverable loss.

---

[4] While other methods of computing actual loss exist, no party argues that the Court should employ one, nor does any party suggest that an alternative method might produce a different result. Therefore, the Court will not explain the other methods or compare their merits to those of LIFO.

First, while the Miami and Louisiana Sheriffs group now advocates for identifying the presumptively most adequate plaintiff based on each movant's recoverable loss, it has only taken this position after being presented with Birmingham, El Paso, and Wayne County's motion. In its initial motion papers, the Miami and Louisiana Sheriffs group instead argued that it was the presumptively most adequate plaintiff because its actual loss, *as measured by LIFO*, exceeded that of any other movant. *See* Miami *et al.* Br. at 7; *City of Miami*, Dkt. 12 at 7-8. In effect, then, Miami and Louisiana Sheriffs first conceded that actual loss, as measured through LIFO, is the appropriate metric for the Court to employ in applying the fourth *Lax* factor, and only proposed recoverable loss as the appropriate metric once it became clear that they would not secure the most adequate plaintiff presumption under a LIFO calculation. By adopting the Miami and Louisiana Sheriffs group's revised position to calculate recoverable loss, the Court would further encourage such gamesmanship. This "type of opportunism . . . is generally unfavored in appointing lead plaintiffs," and therefore "courts are especially skeptical of a movant who initially presents one position in their opening brief and switch[es] to another in their opposition after a new movant comes in alleging a greater loss." *City of Sunrise Firefighter's Pension Fund v. Citigroup, Inc.*, Nos. 20 Civ. 9132 (AJN), 20 Civ. 9573 (AJN), 20 Civ. 10360 (AJN), 2021 WL 396343, at *4 (S.D.N.Y. Feb. 4, 2021). Thus, the inconsistent positions in this litigation taken by the Miami and Louisiana Sheriffs group counsel in favor of employing the methodology it proposed before realizing which methodology would come out in its favor, rather than the methodology it now proposes only after realizing that it was unlikely to prevail under its original position.

Second, relevant authorities weigh overwhelmingly in favor of employing the LIFO method. Courts in this District "have a very strong preference for the last-in, first-out ('LIFO') method." *Simco v. Aegean Marine Petroleum Network Inc.*, Nos. 18 Civ. 4993 (NRB), 18 Civ. 5165 (NRB), 2018 WL 11226076, at *2 (S.D.N.Y. Oct. 30, 2018) (internal quotation marks

11

omitted). Furthermore, multiple courts in this District have explicitly rejected proposed recoverable loss methodologies that were identical or similar to the proposal that the Miami and Louisiana Sheriffs group advances here. *Id.* at \*2-3; *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 275-77 (S.D.N.Y. 2015). As the Honorable Paul G. Gardephe observed in *Sallustro*, recoverable loss methodologies like the one proposed by the Miami and Louisiana Sheriffs group entirely ignore the price at which movants purchased the security, which is inconsistent with the approach typically taken in this District. 93 F. Supp. 3d at 277. Indeed, in support of their approach, the Miami and Louisiana Sheriffs group has identified only three out-of-circuit cases in which the recoverable loss methodology was employed, two of which were before the same judge. *See Mehedi v. View, Inc.*, No. 21 Civ 6374 (BLF), 2022 WL 377406, at \*4-8 (N.D. Cal. Feb. 8, 2022); *Hurst v. Enphase Energy, Inc.*, No. 20 Civ. 4036 (BLF), 2020 WL 7025085, at \*4 (N.D. Cal. Nov. 30, 2020); *Ash v. PowerSecure Int'l, Inc.*, Nos. 14 Civ. 92-D (JCD), 14 Civ. 385-D (JCD), 14 Civ. 388-F (JCD), 2014 WL 5100607, at \*3 (E.D.N.C. Oct. 10, 2014). Thus, the weight of authority favors applying the fourth *Lax* factor based on actual loss rather than recoverable loss.

Finally, at least in this case, the Miami and Louisiana Sheriffs group's proposal is flawed on the merits. In a securities fraud action like this one, the plaintiffs allege that they purchased securities at a price inflated by the defendant's fraudulent misrepresentations, and then suffered injury when that security's price declined following the disclosure of the true facts that had earlier been misrepresented. *See, e.g.*, *Dura Phams., Inc. v. Broudo*, 544 U.S. 336, 344 (2005) ("[A] person who misrepresents the financial condition of a corporation . . . becomes liable to a relying purchaser for the loss the purchaser sustains when the facts become generally known and as a result share value depreciates." (internal quotation marks and ellipsis omitted)). Thus, the damages sustained by the plaintiffs do depend in part on the price they paid for the security—in particular, the damages depend on how greatly the purchase price was inflated by the defendant's misrepresentation, since

12

only that price premium, which dissipates following the disclosure of the truth, may be recovered by the plaintiffs. When a defendant engages in multiple misrepresentations over the course of the class period, as was allegedly the case here, *see San Antonio* Compl. ¶¶ 39-47; *City of Miami* Compl. ¶¶ 23-31, the timing of those misrepresentations may cause the fraud premium to fluctuate over the course of the class period. And if one class member purchased shares at a different time than another, the purchase price may have been higher at one time because of differences in the price premium caused by the defendant's misrepresentations. In that case, the higher purchase price paid by one class member would increase that class member's recoverable loss, since the higher price would have resulted from a higher fraud premium. The method of measuring recoverable loss proposed by Miami and Louisiana Sheriffs, however, entirely ignores such effects. Rather, treating the recoverable loss per share as equal to the price drop that occurred on the date of each disclosure pretends that every class member purchased shares only on the day before the first disclosure. Because each movant in fact purchased its shares throughout the class period, *see* Movants' Share Charts, the metric proposed by Miami and Louisiana Sheriffs inaccurately measures each movant's recoverable loss.

To be sure, Miami and Louisiana Sheriffs are correct that in some sense a movant's actual loss, as measured by LIFO, may not accurately capture its financial interest in this litigation: the actual loss may have been caused, at least in part, by market conditions rather than by the defendant's fraud, in which case the full actual loss would not be recoverable as damages in a securities fraud action. Nonetheless, the Miami and Louisiana Sheriffs group's proposed alternative overcorrects for such flaws: while traditional metrics, like LIFO, incorporate all changes in a security's price during the class period, including those changes that are not attributable to the defendant's alleged fraud, the Miami and Louisiana Sheriffs group instead proposes a metric that considers only the changes that occur immediately after the defendant's disclosures, and that

13

ignores all other changes in a security's price during the class period, including those changes that *are* attributable to the defendant's alleged fraud. Given that courts in this District typically employ LIFO when applying the fourth *Lax* factor, and given that the Miami and Louisiana Sheriffs group itself advocated using LIFO before they learned that a rival group of movants had greater losses under that metric, the Court will not replace LIFO with another metric that is itself flawed.

For these reasons, the Court will employ LIFO when applying the fourth *Lax* factor. According to that metric, the group of Birmingham, El Paso, and Wayne County has suffered the largest loss during the class period. In addition, that group purchased the greatest number of shares and had the greatest net expenditure of funds, the first and third *Lax* factors, while Miami and Louisiana Sheriffs had the greatest number of net shares purchased, the second *Lax* factor. *See, e.g.*, Miami *et al.* Reply at 6. With three of the four *Lax* factors in its favor, including the most important factor of net loss, the group of Birmingham, El Paso, and Wayne County has the greatest financial interest in this litigation, and therefore satisfies the second requirement to be the presumptively most adequate plaintiff.

### 3. Rule 23 Requirements

Lastly, the presumptively most adequate plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). That Rule imposes two requirements that are relevant here: the representative party's claims and defenses must be "typical of the claims or defenses of the class" and the party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)-(4).[5] The group consisting of Birmingham, El Paso, and Wayne County satisfies both.

---

[5] At the lead plaintiff selection stage, only typicality and adequacy are relevant. *Lopez v. CTPartners Exec. Search Inc.*, No. 15 Civ. 1476 (PAE), 2015 WL 2431484, at *2 (S.D.N.Y. May 18, 2015) ("At this early stage of litigation, however, only the last two factors—typicality and adequacy—are pertinent." (internal quotation marks omitted)).

14

The typicality requirement is satisfied when the representative party's claim "arises from the same course of events" as those of the rest of the class, and when the party "makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). Birmingham, El Paso, and Wayne County's claims do not differ in any material respect from those of any other member of the class: like the rest of the class, the group alleges that its members purchased Dentsply shares at a price inflated by Defendants' fraudulent misrepresentations, and that those investors suffered injury when the share price declined following the public correction of those misrepresentations. *Compare San Antonio* Compl. ¶¶ 1, 8-16, *City of Miami* Compl. ¶¶ 1, 6-10, *with San Antonio*, Dkt. 15-3; *City of Miami*, Dkt. 8-4.

The adequacy requirement is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011). Two of these conditions are clearly met as to Birmingham, El Paso, and Wayne County. As to the first, Robbins Geller is an experienced plaintiffs' firm with an active securities practice. *See generally San Antonio*, Dkt. 56-1 ("Robbins Geller Firm Resume"). And as to the third, according to the Miami and Louisiana Sheriffs group's proposed methodology of calculating recoverable loss, Birmingham, El Paso, and Wayne County together allege recoverable losses of over $1.5 million, which easily constitutes a sufficient interest in the outcome of this case to ensure vigorous advocacy on behalf of the class.

With respect to the second consideration, the Court is aware of no condition that would give rise to a conflict between Birmingham, El Paso, and Wayne County's interests and the interests of other class members: all seek to maximize the recovery paid by Defendants for their alleged misrepresentations. But while the Exchange Act by its terms does not impose any enhanced

15

adequacy showing for a group, some courts have identified adequacy-related considerations arising from the concern that the group will not function cohesively and will be unable to effectively coordinate and supervise counsel. *See Lian v. Tuya*, No. 22 Civ. 6792 (JPC), 2022 WL 17850134, at *3 (S.D.N.Y. Dec. 22, 2022); *Hansen*, 2017 WL 281742, at *4 (collecting cases). Thus, in *Varghese*, the court identified five factors to consider when assessing the adequacy of a proposed lead plaintiff group: (1) "the existence of a pre-litigation relationship between group members," (2) "involvement of the group members in the litigation thus far," (3) "plans for cooperation," (4) "the sophistication of [the group's] members," and (5) "whether the members chose outside counsel, and not vice versa." *Varghese*, 589 F. Supp. 2d at 392. While the court in *Varghese* articulated those factors in determining whether a proposed group could qualify as presumptive lead plaintiffs under the Exchange Act, this Court finds them helpful in assessing adequacy under Rule 23. *See Hansen*, 2017 WL 281742, at *4-5 (considering the *Varghese* factors in finding a *prima facie* showing of adequacy under Rule 23).[6] A Joint Declaration, which was signed by representatives of Birmingham, El Paso, and Wayne County and was filed in support of their lead plaintiff motions in both actions, guides the Court's application of the *Varghese* factors. *See San Antonio*, Dkt. 15-5; *City of Miami*, Dkt. 8-6 ("Joint Declaration").

First, the Declaration notes the existence of "pre-existing contacts between [the three entities] and [their] representatives," as well as that the three entities "shared advisors," including the "investment manager that purchased Dentsply Sirona stock on [their] behalves." Joint

---

[6] Some courts have required "an evidentiary showing that unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers before its members will be designated as presumptive lead plaintiffs" when applying the five factors. *Varghese*, 589 F. Supp. 2d at 392; *accord Cohen*, 2020 WL 3127808, at *3 (same). Because the text of the Exchange Act contains no indication that a group must make a greater evidentiary showing to be appointed lead plaintiff, this Court finds more persuasive the approach followed in *Hansen*, where the court construed the *Varghese* factors not as imposing a "required evidentiary showing" but rather as factors which may be used to examine a group's *prima facie* showing of adequacy under Rule 23. *Hansen*, 2017 WL 281742, at *4.

Declaration ¶ 5. While their shared investment advisor and contacts with one another as participants in the same industry may not give rise to an especially deep or substantial relationship, these considerations do reflect some degree of a preexisting relationship. Second, Birmingham, El Paso, and Wayne County conducted a "pre-motion conference call" in which they discussed the background to this litigation, their investments in Dentsply stock, the process for serving as lead plaintiff, and their reasons for seeking joint appointment. *Id.* ¶ 6. Due to this involvement of group members in the litigation, the second factor weighs in favor of adequacy. *See Lian*, 2022 WL 17850134, at *4. On that call, they also discussed their "strategy for jointly prosecuting this case," Joint Declaration ¶ 7, and in the Joint Declaration they commit to "continu[ing] to communicate with each other and [to] provide guidance, insight, and direction to Robbins Geller and on major litigation events," *id.* ¶ 8. Such plans for cooperation lead the third factor to weigh in favor of adequacy. *See Hansen*, 2017 WL 281742, at *4 (finding that a declaration that the group members "'have discussed with each other the importance of joint decision-making and maintaining regular communication that will enable [them] to confer, with or without counsel, via telephone and/or e-mail on short notice to ensure' timely decision-making, and have 'exchanged contact information and . . . instructed counsel to arrange for calls upon [their] demand,'" adequately supported the group members' "understanding of the importance of coordination, communication, and oversight over counsel" and thus supported adequacy (alterations in original)). The fourth factor weighs strongly in favor of adequacy: Birmingham, El Paso, and Wayne County are each municipal pension funds run by sophisticated, professional financial managers, Joint Declaration ¶¶ 2-4, and "are thus the type of sophisticated institutional investors envisioned by Congress in the enactment" of the provisions governing the appointment of lead plaintiffs, *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009). Finally, because the Joint Declaration does not indicate whether or not Birmingham, El Paso, and Wayne County formed a

17

shared intention to seek appointment as Lead Plaintiffs before or after they selected Robbins Geller as their counsel, the fifth factor is either neutral or weighs against adequacy. All things considered, the Court concludes that Birmingham, El Paso, and Wayne County are sophisticated institutional investors committed to taking an active role in this litigation, and that they have therefore made a *prima facie* showing of the adequacy of their group for purposes of Rule 23.

### 4. Most Adequate Plaintiff

The group comprised of Birmingham, El Paso, and Wayne County thus satisfies the Exchange Act's requirements to trigger the presumption that they are the most adequate plaintiff: the group has timely moved for lead plaintiff appointment, has the largest financial interest in the relief sought by the class, and both advances claims typical of the class and has shown that it will fairly and adequately protect the interests of the class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). That presumption is rebuttable "only upon proof by a member of the purported plaintiff class" that such presumptive lead plaintiff will not fairly and adequately represent the class's interests or otherwise is subject to unique defenses that render such plaintiff incapable of adequately representing the class. *Id.* § 78u-4(a)(3)(B)(iii)(II). And while San Antonio and the group comprised of Miami and Louisiana Sheriffs each claims that it is the presumptively most adequate plaintiff, neither advances any argument that would rebut the presumption that the group of Birmingham, El Paso, and Wayne County constitutes the most adequate plaintiff. With that presumption not rebutted, the Court concludes that Birmingham, El Paso, and Wayne County together constitute the most adequate plaintiff and therefore appoints them Lead Plaintiffs. *See id.* § 78u-4(a)(3)(B)(i).

## B. Lead Counsel

Having been appointed Lead Plaintiffs, the group of Birmingham, El Paso, and Wayne County is vested with the authority to select Lead Counsel for the class: "The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."

*Id.* § 78u-4(a)(3)(B)(v).  As courts in this District have held, though this provision does envision some role for the court in supervising the selection of Lead Counsel, it "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention."  *In re KIT Digital, Inc. Sec. Litig.*, 293 F.R.D. 441, 448 (S.D.N.Y. 2013) (internal quotation marks omitted).  For that reason, courts routinely grant their approval when a Lead Plaintiffs selects as Lead Counsel a law firm experienced in the type of class actions for which it has been retained.  *See, e.g.*, *Denny v. Canaan, Inc.*, No. 21 Civ. 3299 (JPC), 2021 WL 5847647, at *5 (S.D.N.Y. Dec. 9, 2021).  The Court has reviewed Robbins Geller's firm resume, which sets forth its extensive experience representing plaintiffs in class actions and profiles the partners and other attorneys who have led those representations.  *See* Robbins Geller Firm Resume; *see also Lian*, 2022 WL 17850134, at *4.  Consequently, the Court grants approval for Birmingham, El Paso, and Wayne County's choice of Lead Counsel.

The Court therefore appoints Birmingham, El Paso, and Wayne County as Lead Plaintiffs and Robbins Geller as Lead Counsel in this case.  Defendants shall confer with Lead Plaintiffs as to whether any party seeks a transfer of venue, and, if not, regarding a proposed schedule for any amendment to the Complaint and for Defendants' responses to the operative complaint. Furthermore, given that all parties consent, *see San Antonio*, Dkt. 57; *City of Miami*, Dkt. 41, the Clerk of Court is respectfully directed to consolidate case number 23 Civ. 2910 with case number 22 Civ. 6339.  Lastly, the Clerk of Court is respectfully directed to lift the stay and to close the motions pending at Docket Numbers 5, 9, and 13 on the docket of case number 22 Civ. 6339.

SO ORDERED.

Dated: June 1, 2022
New York, New York

_____
JOHN P. CRONAN
United States District Judge

19