# Exhibit 2

PUBLIC REDACTED COPY

STATE OF NORTH CAROLINA
COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION

CIVIL ACTION NO.: 23-CVS-319485

| | |
|---|---|
| ALCOF III NUBT, L.P., et al., | |
| Plaintiffs, | |
| v. | |
| JAMES M. CHIRICO, JR. KIERAN MCGRATH, and STEPHEN D. SPEARS. | |
| Defendants. | |

**BRIEF OF DEFENDANT KIERAN MCGRATH
IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ..........................................................................................................................2

        A.     The Parties.........................................................................................................2

        B.     Avaya's Business ..............................................................................................3

        C.     Avaya's Operating Results ...............................................................................5

        D.     Alleged Misrepresentations ..............................................................................8

LEGAL STANDARD....................................................................................................................9

ARGUMENT ..............................................................................................................................10

I.       THE COMPLAINT FAILS TO ALLEGE STANDING ...................................10

II.      VENUE IS IMPROPER .....................................................................................12

III.     THE COMPLAINT FAILS TO STATE A FRAUDULENT
         MISREPRESENTATION CLAIM AGAINST McGRATH ............................14

        1.     *The Forward-Looking Statements Are Non-Actionable As A
             Matter Of Law*........................................................................................14*

        2.     *The Complaint Fails To Allege Any False Or Misleading
             Statement Or Omission* .........................................................................17

        3.     *The Complaint Fails To Plead Scienter As To McGrath*........................21

        4.     *The Complaint Fails To Plead Reliance* .................................................22

IV.     THE COMPLAINT FAILS TO STATE A FRAUDULENT OMISSION
         CLAIM AGAINST McGRATH .......................................................................23

V.      THE COMPLAINT FAILS TO STATE A NEGLIGENT
         MISREPRESENTATION CLAIM AGAINST McGRATH ............................26

CONCLUSION............................................................................................................................27

RULE 7.8 CERTIFICATION.......................................................................................................30

## TABLE OF AUTHORITIES

**Cases**

*Alamance Fam. Prac., P.A. v. Lindley,*
2018 NCBC 82 (N.C. Super. Ct. Aug. 14, 2018) ....................................................23

*Ausley v. Bishop,* 133 N.C. App. 210 (1999) ................................................................26

*Aym Techs., LLC v. Scopia Capital Mgmt. LP,*
2021 NCBC LEXIS 29 (N.C. Super. Ct. Mar. 31, 2021)........................................24

*Big League Analysis, LLC v. Office of Commn'r of Baseball,*
2016 NCBC 66 (N.C. Super. Ct. Aug. 29, 2016) ...........................................9, 12, 13

*Bob Timberlake Collection, Inc. v. Edwards,*
176 N.C. App. 33 (2006) .......................................................................................27

*Bond Opportunity Fund v. Unilab Corp.,*
2003 WL 21058251 (S.D.N.Y. May 9, 2003) .........................................................22

*Calloway v. Wyatt,*
246 N.C. 129 (1957) .............................................................................................21

*Carmayer, LLC v. Koury Aviation, Inc.,*
2017 NCBC 80 (N.C. Super. Ct. Sept. 11, 2017) .............................................14, 26

*Daniel Grp., Inc. v. Am. Sales & Mktg. Inc.,*
2016 NCBC 97 (N.C. Super. Ct. Dec. 15, 2016) ...................................................24

*ECN Fin., LLC v. Chapman,*
2018 WL 623679 (E.D. Pa. Jan. 30, 2018).............................................................11

*Ellison v. Alexander,*
207 N.C. App. 401 (2010) .....................................................................................13

*Estate of Vaughn v. Pike Elec., LLC,*
230 N.C. App. 485 (2013) ...........................................................................10, 19, 21

*Gvest Real Estate, LLC v. JS Real Estate Invs., LLC,*
2023 NCBC 61 (N.C. Super. Ct. Sept. 12, 2023) ...................................................14

*Hardin v. KCS Int'l, Inc.,*
199 N.C. App. 687 (2009) .....................................................................................14

*Harper v. City of Asheville,*
160 N.C. App. 209 (2003) ....................................................................................... 9

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997) ..................................................................................25

*In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.*,
7 F.3d 357 (3d Cir. 1993) .......................................................................................16

*In re Lululemon Sec. Litig.*,
14 F. Supp. 3d 553 (S.D.N.Y. 2014) ................................................................17, 18

*In re Royal Appliance Sec. Litig.*,
64 F.3d 663 (6th Cir. 1995) ....................................................................................26

*Karth v. Keryx Biopharmaceuticals, Inc.*,
6 F.4th 123 (1st Cir. 2021) .....................................................................................17

*Kiker v. Winfield*,
234 N.C. App. 363 (2014) ......................................................................................... 9

*Kolominsky v. Root, Inc.*,
2023 WL 3215056 (S.D. Ohio Mar. 31, 2023) .......................................................16

*L. Offs. Of Peter H. Priest, PLLC v. Coch*,
2014 NCBC 54 (N.C. Super. Ct. Nov. 5, 2014) ......................................................17

*Lawrence v. UMLIC-Five Corp.*,
2007 NCBC 20 (N.C. Super. Ct. June 18, 2007)....................................................23

*Lester v. McLean*,
242 N.C. 390 (1955) ................................................................................................15

*Lillian Knitting Mills Co. v. Earle*,
237 N.C. 97 (1953) ..................................................................................................22

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .................................................................................................11

*Magi XXI, Inc. v. Stato della Città del Vaticano*,
714 F.3d 714 (2d Cir. 2013)....................................................................................13

*Meyer v. Walls*,
347 N.C. 97 (1997) ..................................................................................................21

*NNN Durham Off. Portfolio 1, LLC v. Grubb & Ellis Co.*,
2016 NCBC 93A (N.C. Super. Ct. Dec. 29, 2016)..................................................16

*NNN Durham Off. Portfolio 1, LLC v. Highwoods Realty Ltd. P'ship,*
2013 NCBC 12 (N.C. Super. Ct. Feb. 19, 2013) ....................................................23

*NNN Durham Off. Portfolio,*
261 N.C. App. 185 (2018) ...................................................................................26

*Oberlin Cap., LP v. Slavin,*
147 N.C. App. 52 (2001) ...................................................................................3, 4

*Oliver v. Brown & Morrison, Ltd.,*
2022 NCBC 13 (N.C. Super. Ct. Mar. 3, 2022)................................................26

*Plasman v. Decca Furniture (USA), Inc.,*
2016 WL 6208639 (N.C. Super. Ct. Oct. 21, 2016)..........................................14

*Sinay v. Lamson & Sessions Co.,*
948 F.2d 1037 (6th Cir. 1991) ..........................................................................16

*Speedway Motorsports Int'l, Ltd. v. Bronwen Energy Trading, Ltd.,*
2009 NCBC LEXIS 17 (N.C. Super. Ct. Feb. 18, 2009) ..................................13

*Stavroff v. Meyo,*
987 F. Supp. 987 (N.D. Ohio 1995) ..................................................................26

*Value Health Sols., Inc. v. Pharm. Rsch. Assocs., Inc.,*
385 N.C. 250 (2023) ...................................................................10, 14, 15, 17

*Watson v. Joyner-Watson,*
263 N.C. App. 393 (2018) ................................................................................. 9

*Wirth v. Sunpath, LLC,*
2017 NCBC 82 (N.C. Super. Ct. Sept. 14, 2017) .......................................11, 12

*Zagaroli v. Neill.,*
2016 NCBC LEXIS 106 (N.C. Super. Ct. Dec. 29, 2016) ................................24

**Statute**

N.C. Gen. Stat. § 55-8-42(b)..............................................................................27

**Rule**

N.C.G.S. § 1A-1, Rule 9(b) ...............................................................................10

## PRELIMINARY STATEMENT

This Complaint is a textbook example of insufficient, imprecise, and improper pleading as to defendant Kieran McGrath ("McGrath").  It should be dismissed. Plaintiffs purport to hold certain (unspecified) "interests" in a term loan made to Avaya – either directly or on behalf of certain (unidentified) funds.  "Certain" (unidentified) plaintiffs purport to act as successors-in-interest to certain (unidentified) original investors without facts in support of the alleged successorship. As a result, the Complaint fails to allege that each and every one of the eighteen plaintiffs has suffered damages that give them standing to pursue the claims alleged in the Complaint.

Even if plaintiffs loaned funds to Avaya, the Complaint has no place in this Court:  The term loan agreement that debt investors entered into with Avaya unambiguously sets forth that the "exclusive" venue for any disputes that may arise in relation to these loans is the courts "of the State of New York" or "the United States of America for the Southern District of New York."

Turning to the substance of plaintiffs' claims, the Complaint fails to identify any materially *false statement* made by McGrath – as opposed to inactionable forward-looking statements and opinions – much less alleges that McGrath made any statements with the necessary knowledge of falsity or that plaintiffs reasonably relied on any alleged false statements.

Plaintiffs' theory of liability against McGrath is based entirely on Avaya's failure to meet the earnings guidance it provided for the third quarter of fiscal year 2022.  A corporation's failure to meet guidance is not fraud.  The Complaint fails to

allege facts that support a reasonable inference that Avaya's financial projections, read in the context of Avaya's related disclosures about that guidance set forth in documents incorporated by reference in the Complaint, were false when they were made. Read in their totality – as this Court must do – Avaya's earnings guidance includes significant qualifications to Avaya's opinions subject to expressly disclosed "risks and uncertainties, many of which [were] beyond [Avaya's] control." McGrath is only alleged to have repeated Avaya's corporate guidance. As a result, nothing McGrath said was false. The Complaint lacks any allegations sufficient to allow this case to proceed against McGrath, an individual corporate officer acting on behalf of the corporation.

## BACKGROUND

### A. The Parties

McGrath is the former Executive Vice President and Chief Financial Officer of Avaya Holdings Corp. (together with its consolidated subsidiaries, "Avaya"), who served from February 2019 to November 2022. Compl. ¶ 32.

Plaintiffs are twelve Cayman Island companies, three Delaware entities, a Texas bank, and an Iowa corporation, Compl. ¶¶ 3, 15-30, as well as a fund manager acting "on behalf of funds it manages," Compl. ¶ 14. Either directly or on behalf of other (unidentified) funds, plaintiffs purport to hold "interests" in Avaya's B-3 Term Loan. Compl. ¶ 13-30. The B-3 Term Loan was provided to Avaya pursuant to Amendment No. 4 to the Term Loan Credit Agreement entered on July 12, 2022 between Avaya and its lenders. *B-3 Term Loan Amendment* (July 12, 2022) (Ex. 1). "Certain" (unidentified) plaintiffs "acquired interests in the B-3 Term Loan and all

2

claims and enforcement rights related thereto" from other (unidentified) "predecessors in interest" that made the "original" investment in the loan. Compl. ¶ 35 & n.1.

## B.    Avaya's Business

Established in 2000, Avaya is a digital communications company that sells software and services for enterprise telephone and call center solutions worldwide. Compl. ¶ 36; *10-K Annual Rep.* 25, 113 (Ex. 2). Avaya operated in approximately 190 countries and had more than 8,000 employees. Ex. 2 at 12, 25. Since its emergence from a prior bankruptcy in December 2017, Avaya was executing on a fundamental change in its business model, transitioning from a telephone hardware company to a subscription and cloud services company. *Id.* at 2, 18, 89.

In its public disclosures that are incorporated by reference in the Complaint,[1] Avaya highlighted the material risks and uncertainties related to this transition. For example, Avaya specifically warned investors:

> [O]ur business will remain dependent on customer decisions to migrate their legacy communications infrastructures to cloud solutions based on newer technology.
>
> If the market for cloud-based communications fails to develop, develops more slowly than we anticipate, or develops in a manner different than we expect, . . . our cloud-based solutions and services could fail to achieve market acceptance.

---

[1] This Court may "properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant." *Oberlin Cap., LP v. Slavin*, 147 N.C. App. 52, 60 (2001). Plaintiffs have incorporated Avaya emails, securities filings, lender presentation, and press-releases, which are discussed herein.

3

> As is typical of any new solution introduced in a rapidly evolving market, the level of demand for, and market acceptance of these new solutions is uncertain.

*Id.* at 18, 21.

Avaya disclosed that its transition from hardware sales to a subscription business involved the application of complex accounting rules for revenue recognition and that resulted in significant issues of revenue timing and deferral. Under a subscription contract, Avaya has the right to receive a monthly or yearly fee from a customer over a finite contractual period, rather than a single lump-sum payment. This creates accounting complexity: Avaya recognizes as revenue in the current period only a portion of the total contract value, based on judgments as to the approximate value of the right to use granted to the customer. *Id.* at 64. The upfront revenue, which Avaya typically reports in the same quarter the customer signs a subscription contract, varies significantly depending on a number of factors (*e.g.*, term length, early termination rights). *Id.* The remaining revenue from a subscription contract is reported in subsequent quarters. Accordingly, Avaya disclosed additional material risks that could impact its quarterly revenue and earnings:

> Our quarterly and annual revenues and operating results have **historically fluctuated** and are not necessarily indicative of results to be expected in future periods. Fluctuations in our financial results from period to period are caused by many factors, including, but not limited to, **the size and timing of new logos, changes in foreign currency exchange rates, the mix of products sold by us and general economic conditions**. In addition, **execution of sales opportunities sometimes traverses from the intended fiscal quarter to the next**.
>
> [I]f **the mix of companies that purchase our solutions, or the mix of solution components purchased by our customers, changes**

4

**unfavorably**, **our revenues and gross margins could decrease** and our operating results could be harmed.

*Id.* at 27 (emphases added).

As Avaya shifted more of its business from a traditional model (a one-time up-front payment) to a subscription model (payments made and revenue recognized over the contract term), it disclosed the risk of "more of our cash receipts being deferred."

*Id.* at 18.  Thus, Avaya cautioned its investors:

> ***The timing of our cash flows may be negatively impacted as we shift more of our business to a subscription-based model***.
>
> ***We may not be able to generate sufficient cash to service all of our indebtedness and our other ongoing liquidity needs, and we may be forced to take other actions to satisfy our obligations under our indebtedness, which may not be successful***.
>
> If we are unable to repay or otherwise refinance [our] borrowings and loans when due, the applicable secured lenders could proceed against the collateral pledged to them to secure that indebtedness, which could force us into bankruptcy or liquidation.

*Id.* at 18, 29 (emphases added).

### C.    Avaya's Operating Results

In November 2021, Avaya announced its financial results for the fiscal year ending September 30, 2021, and provided earnings guidance for the future.  *8-K Current Rep.* (Nov. 22, 2021) (Ex. 3).  As occurred the previous year, Avaya recorded a net loss, and its quarterly adjusted EBITDA dropped year over year.  *Id.* at 5.  For fiscal year 2022, Avaya forecasted revenue in the range of $2.975 billion to $3.025 billion and an adjusted EBITDA range of $700 million to $720 million.  *Id.* at 9.  For the next quarter, Avaya expected its revenue and adjusted EBITDA to drop.  *Id.*

Avaya thereafter missed its earnings guidance in each of the first two quarters of fiscal year 2022. *Q2 2022 Earnings Call* 4-5, 7 (May 10, 2022) (Ex. 4). In an earnings call on May 10, 2022, Avaya explained that "the percentage of revenue recognized . . . was lower" due to several non-standard deals and that "the crisis and conflict in Ukraine" impacted the company's earnings in Eastern Europe. *Id.*

The same day, Avaya lowered its revenue guidance for the year to $2.815 billion to $2.855 billion—the lowest in recent years—and estimated adjusted EBITDA of $580 million to $600 million. Compl. ¶¶ 42-43; *8-K Current Rep.* 8 (May 10, 2022) (Ex. 5). For the third quarter, Avaya forecasted a revenue range of $685 million to $700 million—the lowest in recent quarters—and an adjusted EBITDA range of $140 million to $150 million. Ex. 5 at 8. This earnings guidance was accompanied by further cautionary statements:

> The Company has based these forward-looking statements on its current expectations, assumptions, estimates and projections. . . . **While the Company believes these expectations, assumptions, estimates and projections are reasonable, such forward-looking statements are only predictions and involve known and unknown risks and uncertainties, many of which are beyond its control**. Risks and uncertainties that may cause these forward-looking statements to be inaccurate include, among others, termination or modification of current contracts which could impair attainment of our OneCloud ARR metric; the duration, severity and impact of the coronavirus pandemic ("COVID-19"), the impact of the Russia/Ukraine conflict on the global economy and our business, . . . and other factors discussed in the Company's Annual Report on Form 10-K and subsequent quarterly reports . . . . **These risks and uncertainties may cause the Company's actual results, performance or achievements to differ materially from any future results, performance or achievements expressed or implied by these forward-looking statements.** . . . The Company undertakes no obligation to publicly update or revise any forward-looking statement as a result of new information, future events or otherwise, except as otherwise required by law.

*Id.* at 10 (emphases added).

On June 8, 2022, Avaya announced that it launched a financing transaction to refinance an existing debt due June 15, 2023, and for general corporate purposes. Compl. ¶ 46. Avaya made available on its website a presentation for potential lenders, which repeated the earnings guidance the company had announced on May 10, 2022. Compl. ¶ 50; *Lender Presentation* (June 8, 2022) (Ex. 6). The presentation began with cautionary statements substantially identical to those that accompanied the earnings guidance. Ex. 6 at 2. Avaya closed its loan transaction on July 12, 2022. Compl. ¶ 5.

On July 28, 2022, after the closing and the third quarter end, Avaya withdrew its prior earnings guidance and announced preliminarily that it expected reduced quarterly revenue of between $575 million to $580 million and adjusted EBITDA between $50 million to $55 million. Compl. ¶ 73; *8-K Current Rep.* 6 (July 28, 2022) (Ex. 7). On August 9, 2022, Avaya estimated its third quarter results at $577 million in revenues and $54 million in adjusted EBITDA. Compl. ¶¶ 74, 76; *8-K Current Rep.* 5 (Aug 9, 2022) (Ex. 8) . Avaya explained, consistent with the risks it previously disclosed, that "total contract value was less than our internal forecast because average contract duration and average contract size declined." *Q3 2022 Earnings Call* 2 (Aug. 9, 2022) (Ex. 9); *see* Compl. ¶ 74. Despite having "signed nearly 120 more subscription deals in Q3 versus Q2," the company explained that "Avaya's subscription revenues are based on total contract revenues, so these declines in duration and size meaningfully depress current quarter revenue recognition." Ex. 9 at 2.

7

On August 9, 2022, Avaya also announced that the company was "engaging with advisors to assess its options" with respect to its debt due 2023, which it intended to refinance through the financing transactions that closed in July 2022. Ex. 8 at 7; *see* Compl. ¶ 76. "As a result" of such ongoing assessment, Avaya's "decline in revenues during the third quarter," and "the negative impact of significant operating losses on the Company's cash balance," the company announced that "as of the date of this release, the Company has determined that there is substantial doubt about the Company's ability to continue as a going concern." Ex. 8 at 8.

### D.    Alleged Misrepresentations

The Complaint alleges, in a wholly conclusory fashion, that McGrath "*knowingly* made misrepresentations regarding Avaya's financial condition in the Lender Presentation, May 8-K, and orally, that Avaya *projected* $140-$150 million of Adjusted EBITDA and $685-$700 million of revenue for the third quarter of 2022." Compl. ¶ 90 (emphases added). These statements consist exclusively of inactionable statements of opinions about Avaya's financial projections during the quarter:

*(a)    Avaya's Form 8-K Report on May 10, 2022.* The Complaint alleges (at ¶ 41) that McGrath signed Avaya's securities filing dated May 10, 2022, which included a press release containing the company's earnings guidance for the third quarter and fiscal year 2022. Ex. 5.

*(b)    Investor Calls on May 10 & 25, 2022.* The Complaint alleges (at ¶¶ 41, 44) that McGrath repeated Avaya's earnings guidance in calls with investors on May 10 and 25, 2022.

***(c)***   ***Lender Presentation Dated June 8, 2022.***  The Complaint alleges (at ¶¶ 47, 50) that McGrath signed Avaya's securities filing dated June 8, 2022 that referenced Avaya's lender presentation, which in turn repeated Avaya's earnings guidance announced on May 10, 2022.  *8-K Current Rep.* 2 (June 8, 2022) (Ex. 10).

## LEGAL STANDARD

### A.   Rule 12(b)(1)

"Rule 12(b)(1) requires the dismissal of any action 'based upon a trial court's lack of jurisdiction over the subject matter of the claim.'"  *Watson v. Joyner-Watson*, 263 N.C. App. 393, 394 (2018) (citation omitted).  The plaintiff bears the burden of establishing subject matter jurisdiction.  *See Harper v. City of Asheville*, 160 N.C. App. 209, 217 (2003).

### B.   Rule 12(b)(3)

A Rule 12(b)(3) motion is the proper method by which to seek dismissal of a complaint under a forum selection clause.  *Big League Analysis, LLC v. Office of Commn'r of Baseball*, 2016 NCBC 66, ¶ 16 (N.C. Super. Ct. Aug. 29, 2016).  "The general rule in North Carolina, as elsewhere, is that where a demand for removal for improper venue is timely and proper, the trial court has no discretion as to removal." *Kiker v. Winfield*, 234 N.C. App. 363, 364 (2014).

### C.   Rule 12(b)(6)

Under Rule 12(b)(6), a complaint must be dismissed "when (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim."  *Value Health Sols.,*

*Inc. v. Pharm. Rsch. Assocs., Inc.*, 385 N.C. 250, 263 (2023) (internal quotation marks & citation omitted). The court is not required to accept "mere conclusory allegations, unwarranted deductions of fact, or unreasonable inferences as true." *Estate of Vaughn v. Pike Elec., LLC*, 230 N.C. App. 485, 493 (2013).

The Complaint must allege "the circumstances constituting fraud" with "particularity" by "alleging time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations." *Value Health*, 385 N.C. at 263; N.C.G.S. § 1A-1, Rule 9(b) (2021). This requirement applies to all three counts in the Complaint. *See Value Health*, 385 N.C. at 264, 265.

## ARGUMENT

### I.    THE COMPLAINT FAILS TO ALLEGE STANDING

As a threshold matter, the Complaint must be dismissed for lack of standing. The Complaint alleges that plaintiffs "hold" certain "interests" in Avaya's B-3 Term Loan but nowhere alleges that each and every one of plaintiffs participated in the loan transaction on July 12, 2022. The Complaint summarily – and vaguely – alleges that "*[c]ertain* of the plaintiffs acquired interests in the B-3 Term Loan and all claims and enforcement rights related thereto," Compl. ¶ 35 (emphasis added), but it does not identify which entity or entities are such successors in interest and to which original lender or lenders. Nor does the Complaint allege when any alleged acquisition of interest took place. Moreover, the Complaint alleges that one of plaintiffs, Alta Fundamental Advisers LLC, holds interests only "on behalf of funds it manages" – not for itself – but does not identify the actual holder or holders of such

10

"interest[s]."  Compl. ¶ 14.  These vague and conclusory allegations are insufficient to support the standing of any individual plaintiff to prosecute this action.

"Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction."  *Wirth v. Sunpath, LLC*, 2017 NCBC 82 ¶ 28 (N.C. Super. Ct. Sept. 14, 2017) (internal quotation marks and citation omitted).  To establish standing, a plaintiff must allege an (1) injury in fact, that is (2) fairly traceable to the challenged action of the defendant, that can (3) likely be redressed by a favorable decision.  *Id.* ¶ 29 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  When a plaintiff alleges standing as a *successor in interest*, they must provide sufficient facts to support that legal conclusion.  *See id.* at ¶ 48 (dismissing lawsuit at motion-to-dismiss stage on standing grounds because "[p]laintiff allege[d] no facts to support his conclusory allegation that he is a successor"); *see also ECN Fin., LLC v. Chapman*, 2018 WL 623679, at *3 (E.D. Pa. Jan. 30, 2018) (finding legal conclusion that plaintiff was "successor" insufficient to establish standing).

The Complaint simply lacks the basic allegations necessary to allege that each and every one of the eighteen plaintiffs is an actual injured party whose injury is fairly traceable to the alleged misrepresentations made by McGrath.  It similarly lacks allegations demonstrating that any such injury could be redressed by a favorable decision to these plaintiffs, as opposed to other (unidentified) lenders that actually entered into the term loan agreement with Avaya on July 12, 2022.  The Complaint fails to allege which plaintiff is a successor in interest to an actual lender – let alone sufficient facts to support the legal conclusion that they are appropriate plaintiffs in this action.  The mere conclusory statement in footnote 1, stating that

11

"[a]ll allegations herein pertaining to Plaintiffs' original investment in the B-3 Term Loan . . . include the Plaintiffs' predecessors in interest as applicable," Compl. ¶ 35 n.1, is insufficient as a matter of law, *see Wirth*, 2017 NCBC 82 ¶ 48. The Court must dismiss the Complaint for lack of standing under Rule 12(b)(1).

## II.    VENUE IS IMPROPER

Even if each and every plaintiff were shown to be a proper party to pursue the alleged claims, this action should be dismissed for improper venue under Rule 12(b)(3). Avaya's term loan investors have unambiguously agreed that the "exclusive" venue for any disputes that may arise in relation to their loan is "the courts of the State of New York" or "the United States of America for the Southern District of New York, in each case sitting in New York City."[2] Ex. 1 at 176. North Carolina courts generally enforce mandatory forum selection clauses. *Big League Analysis, LLC*, 2016 NCBC 66, ¶ 27. "[M]andatory forum selection clauses . . . have contained words such as 'exclusive' or 'sole' or 'only.'" *Id*.

Plaintiffs purport to have funded a portion of Avaya's $350 million B-3 Term Loan, which closed on July 12, 2022. Compl. ¶ 5; Ex. 1. Under the term loan agreement, in any legal action or proceeding "relating to" the term loan, each and every lender "irrevocably and unconditionally submit[ted] for itself and its property . . . to the exclusive general jurisdiction of the courts of the State of New York, the

---

[2] A putative class action against McGrath and Chirico is pending before federal court in the Southern District of New York, *Jiang v. Chirico, et al.*, No. 1:23-cv-01258-PGG (S.D.N.Y.). The plaintiffs in that case allege federal securities law claims based on allegations substantially the same as those in this action.

courts of the United States of America for the Southern District of New York, in each case sitting in New York City." Ex. 1 at 176. Further, the term loan lenders "irrevocably and unconditionally" "consent[ed]" that any disputes relating to the term loan "shall be brought" in such New York court and "waive[d]" any "objection that it may now or hereafter have to the venue . . . and "agree[d] not to plead or claim" any such objection. *Id.* It is indisputable that plaintiffs' claims against McGrath "relat[e] to" the term loan that closed on July 12, 2022. Compl. ¶ 5.

The forum-selection clause is binding on plaintiffs in this action. Their claims against McGrath arise exclusively from actions undertaken in his corporate, rather than personal, capacity as Avaya's officer. Under the "closely related" party doctrine, *see Big League Analysis, LLC*, 2016 NCBC 66, ¶¶ 31, 35; *Magi XXI, Inc. v. Stato della Città del Vaticano*, 714 F.3d 714, 723 (2d Cir. 2013); *see also Ellison v. Alexander*, 207 N.C. App. 401, 408-09 (2010) (enforcing arbitration agreement under agency principles); as well as under equitable estoppel principles, *see Speedway Motorsports Int'l, Ltd. v. Bronwen Energy Trading, Ltd.*, 2009 NCBC LEXIS 17, ¶ 58 (N.C. Super. Ct. Feb. 18, 2009), plaintiffs agreed to commence any litigation with respect to their loan to Avaya in a New York court. Plaintiffs have no basis to file this case in this Court. Plaintiffs did not properly establish their standing to pursue claims as the loan investors, but even if they did, their Complaint must be dismissed for improper venue.

## III. THE COMPLAINT FAILS TO STATE A FRAUDULENT MISREPRESENTATION CLAIM AGAINST MCGRATH

To plead a fraudulent misrepresentation claim, a complaint must allege with requisite particularity: "(1) [f]alse representation or concealment of a past or existing material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 696 (2009) (internal quotation marks, citation, and brackets omitted). The complaint must allege facts constituting "reasonable reliance on the part of the complaining party." *Plasman v. Decca Furniture (USA), Inc.*, 2016 WL 6208639, at *11 (N.C. Super. Ct. Oct. 21, 2016). The fraudulent misrepresentation claim in Count I against McGrath must be dismissed because the Complaint fails to allege that he made any actionable false statement, that he acted with fraudulent intent, or that plaintiffs relied on his statements.

### 1. *The Forward-Looking Statements Are Non-Actionable As A Matter Of Law*

All of the alleged misrepresentations by McGrath are forward-looking statements, which must be evaluated under the law applicable to opinion statements and meaningful cautionary disclosures. "Statements of opinion, predictions of future events, and promises of future intent generally do not give rise to an action for fraud." *Gvest Real Estate, LLC v. JS Real Estate Invs., LLC*, 2023 NCBC 61, ¶ 49 (N.C. Super. Ct. Sept. 12, 2023); *Value Health*, 385 N.C. at 275; *see also Carmayer, LLC v. Koury Aviation, Inc.*, 2017 NCBC 80, ¶ 49 (N.C. Super. Ct. Sept. 11, 2017) (holding that plaintiff "could not have justifiably relied on a contingent estimate of future profits and expenses").

14

The allegations in the Complaint are limited to unactionable statements of opinion in which McGrath repeated Avaya's corporate predication about its future earnings.  *See* Compl. ¶ 90 (alleging McGrath "*knowingly* made misrepresentations . . . that Avaya *projected* $140-$150 million of Adjusted EBITDA and $685-$700 million of revenue for the third quarter of 2022") (emphases added).  These opinions are inactionable.  *Lester v. McLean*, 242 N.C. 390, 397 (1955) ("The value of the property . . . was necessarily a matter of opinion" and "such representations do not constitute fraud").  Avaya's earnings projections—both at the time they were first issued and when later repeated—were forward-looking statements accompanied by extensive cautionary disclosures, *see, e.g., supra* pp. 3-6; Exs. 2, 4, 5, 6, undermining any credible argument that these were statements of fact, as opposed to unverifiable projections.  *See Value Health*, 385 N.C. at 275 (affirming dismissal of plaintiff's fraud claim when representation "contain[ed] fulsome disclaimers making it clear that its contents should not be relied upon").

The Complaint further alleges (at ¶ 79) that "Defendants' misrepresentations were based on historical financial performance because *Avaya's third quarter ended 12 days before the B-3 Term Loan was funded*."  But the Complaint nowhere alleges that Avaya's quarterly financial statements were final on July 12, 2022 when the term loan agreement was entered.  The last alleged misrepresentation made by McGrath was on June 8, 2022, when he signed Avaya's current report as of that date, which references a lender presentation that allegedly repeated Avaya's earnings guidance initially issued on May 10, 2022.  Compl. ¶¶ 47-50.

15

Courts are wary of imposing liability for forward-looking economic projections, particularly when the projections are accompanied by cautionary disclosures. "Under the 'bespeaks caution doctrine,' Defendants are excused from liability for 'projections, statements of plans and objectives, and estimates of future economic performance' so long as the statement is identified as 'forward-looking' and is accompanied by 'meaningful cautionary statements.'" *Kolominsky v. Root, Inc.*, 2023 WL 3215056, at *7 (S.D. Ohio Mar. 31, 2023) (citation omitted), *appeal docketed*, No. 23-3392 (6th Cir. May 2, 2023); *see NNN Durham Off. Portfolio 1, LLC v. Grubb & Ellis Co.*, 2016 NCBC 93A ¶ 199 (N.C. Super. Ct. Dec. 29, 2016) (applying bespeaks caution doctrine), *aff'd in part, rev'd in part*, 261 N.C. App. 175 (2018). The doctrine is "essentially shorthand for the well-established principle that a statement or omission must be considered in context, so that accompanying statements may render it immaterial as a matter of law." *In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.*, 7 F.3d 357, 364 (3d Cir. 1993). "[T]o impose liability in this situation would unduly restrain management from disseminating useful information to the market," and "[s]uch a result would not protect investors, but rather would be deleterious to investors because it would prevent the freeflow of information." *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1041 (6th Cir. 1991).

Avaya's cautionary statements warned investors that its earnings guidance was based on the company's "current expectations, assumptions, estimates and projections" and that the "actual results" may "differ materially from any future results . . . expressed or implied by these forward-looking statements." Ex. 5 at 7. Avaya disclosed other specific risks that could impact its actual financial results. *See*

16

*supra* pp. 3-6.  These disclosures by Avaya are incorporated by reference in the Complaint and must be considered together with the specific alleged misrepresentations by McGrath, its officer, in evaluating falsity.  In light of Avaya's cautionary disclosures, which expressly identified the likelihood of potential inaccuracies regarding its future financial performance, the alleged forward-looking statements in the Complaint are neither false nor misleading.  *See Value Health*, 385 N.C. at 275.

### 2. *The Complaint Fails To Allege Any False Or Misleading Statement Or Omission*

The Complaint summarily alleges (at ¶ 79) that McGrath "knew or should have known that the Guidance, when presented to Plaintiffs, was false, unreasonable, and not based on Avaya's actual financial condition, and that Avaya could not meet such guidance based on events that had already occurred."  But there is a stark "absence of facts" to support that conclusory allegation.  It is axiomatic that the "determination of truth or falsity must be made *at the time of the representation*."  *L. Offs. Of Peter H. Priest, PLLC v. Coch*, 2014 NCBC 54 ¶ 55 (N.C. Super. Ct. Nov. 5, 2014) (emphasis added) (internal quotation marks & citation omitted), *aff'd*, 244 N.C. App. 53 (2015).  "[W]ithout *contemporaneous* falsity, there can be no fraud."  *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 571 (S.D.N.Y. 2014).  "[A] complaint may not simply contrast a defendant's past optimism with less favorable actual results in support of a claim of securities fraud."  *Karth v. Keryx Biopharmaceuticals, Inc.*, 6 F.4th 123, 135 (1st Cir. 2021).

17

Fraud by hindsight is improper, yet that is all the Complaint alleges against McGrath. At its core, the Complaint posits: Because Avaya later failed to meet its guidance, McGrath's prior repetition of Avaya's guidance was false. The law is emphatically to the contrary: "[W]ithout *contemporaneous* falsity, there can be no fraud." *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 571 (S.D.N.Y. 2014). This fundamental pleading error requires dismissal: a corporate officer who repeats corporate projections that proved later to be incorrect has not made a false statement.

The Complaint alleges no facts supporting an inference that Avaya's earnings guidance was unfounded, false, or misleading when the company disclosed it on May 10, 2022. Nor were those projections false when they were later incorporated in a lender presentation on June 8, 2022 – or when McGrath allegedly referred to it in calls on May 10 and 25, 2022.

The Complaint quotes portions of a handful of internal emails – none of which was sent or received by McGrath – to suggest that McGrath "*[p]resumably*" knew that Avaya would underperform its projections. *See* Compl. ¶ 57 (emphasis added). An observation about what a defendant presumably knew is entitled to no weight. The Complaint cites an email chain from April 11, 2022, in which some members of Avaya's finance team expressed "███████" views on a "████████████" for the quarterly earnings guidance with respect to a specific geographic sales region, North America. Compl. ¶ 56; Apr. 11, 2022 Email (Ex. 11). The Complaint does not allege that McGrath knew about these "████████████" about a regional forecast in April 2022, much less that these discussions adequately demonstrate that Avaya's guidance on

18

its worldwide operations, issued a month later (i.e., after additional revenue information was available), was false.

Similarly, the Complaint cites an email chain from May 11, 2022, in which some members of Avaya's finance team discussed whether to confer with Chief Revenue Officer Stephen Spears—head of the *sales teams worldwide*—regarding a *regional forecast*. Compl. ¶¶ 58-60. Again, nowhere does the Complaint allege facts that support a reasonable inference that these musings undermine the accuracy of the *worldwide financial projections* prepared by others at Avaya. Nor does the Complaint include allegations sufficient to demonstrate that opinions about lower than expected sales in North America (during the first half of the quarter) meant that Avaya's opinions about its expected worldwide results were unfounded. These sloppy and misleading allegations are utterly insufficient to make the entirety of Avaya's May 10 guidance false – any suggestion to the contrary is an "unwarranted deduction[] of fact." *Vaughn*, 230 N.C. App. at 493. Again, the Complaint does not allege that McGrath even knew about these discussions.

The Complaint alleges repeatedly that Avaya withdrew its prior earnings guidance on July 28, 2022—two weeks after the loan transaction closed. Compl. ¶¶ 2, 5, 73. But, again, this adds noting to the fraud allegations against McGrath: Avaya's decision to restate guidance after it learned the actual results of the third quarter is irrelevant to whether its earlier projections were unfounded or false. Avaya's withdrawal of the earnings guidance one month after the third quarter ended does not support any reasonable inference that the company's earning guidance announced on May 10, 2022 – more than two months earlier – was false or misleading

19

at the time. Nor do those allegations suggest that McGrath's repetition of that prior earnings guidance was false or misleading at the time.

The Complaint also alleges facts arising from Avaya's bankruptcy filing in 2023. Compl. ¶ 86. But the bankruptcy document incorporated by reference in the Complaint – *filed nearly a year after* Avaya's earnings guidance forecast – undermines any suggestion of fraud. In support of their petition, Avaya explained that, following the first half of fiscal year 2022 in which the Company was experiencing and disclosing challenges related to its business transition, its third-quarter results reflected an entirely "unexpected decline in revenue." Decl. of Eric Koza, Chief Restructuring Officer of Avaya Holdings Corp. and Certain of its Affiliates and Subsidiaries, in Supp. of the Debtors' Chapter 11 Pets. and 1st Day Mots. at 24, *In re Avaya Inc*, No. 23-90088 (DRJ) (Bankr. S.D. Tex. Feb. 14, 2023), ECF No. 4 (Ex. 12). Nothing in that filing remotely suggests that McGrath had any reason to know that Avaya would miss its earnings guidance for the third quarter. Again, unexpected financial results are a standard feature of corporate life—and irrelevant to a claim of fraud.

Nothing else in the Complaint suggests that McGrath made any false statements. *See* Compl. ¶¶ 62-72, 80-83. The allegations in these paragraphs postdate the allegedly inflated earnings guidance and do not support a reasonable inference that Avaya's earlier projections about third-quarter financial performance were knowingly false when they were released (or later repeated by McGrath). *Id.* ¶¶ 62-63 (June 14 email); ¶¶ 64-72, 80-83 (July 2022 post-quarter emails).

### 3.    *The Complaint Fails To Plead Scienter As To McGrath*

Even if the Complaint alleged an actionable misrepresentation or omission by McGrath—which it does not—it wholly fails to allege McGrath knew those statements were false, or that he otherwise acted with fraudulent intent.  "A complaint which contains no allegation of a fraudulent intent, *or facts from which it may reasonably be inferred*, fails to state a cause of action for [fraud]."  *Calloway v. Wyatt*, 246 N.C. 129, 133 (1957) (emphasis added).  And while intent, knowledge, and "other condition[s] of mind" may be "averred generally," N.C. Code Civ. P. 9(b), the bedrock rule remains that the Court must not accept as true "conclusory allegations" and "unwarranted deductions of fact."  *See Vaughn*, 230 N.C. App. at 493 (holding conclusory allegations as to company's knowledge and intent insufficient to show employer intentionally engaged in misconduct); *Meyer v. Walls*, 347 N.C. 97, 114 (1997) (holding "conclusory allegation[s]" about officials acting "willfully and wantonly should not be sufficient" to survive Rule 12(b)(6) and "[t]he facts alleged in the complaint must support such a conclusion").

Here, the Complaint is replete with conclusory allegations that McGrath "knew" various statements were false when made.  Compl. ¶¶ 2, 6, 55, 79.  But it includes *no facts* to support these conclusory statements.

The Complaint quotes from emails that McGrath never sent or received.  *See* Compl. ¶¶ 56-72.  The Complaint improperly *speculates* that McGrath must have known about the documents solely by virtue of his position as CFO of a company with more than 8,000 employees.  *See* Compl. ¶¶ 61 ("It is *highly unlikely* that the foregoing information reached Defendant Chirico without also reaching Defendant

21

McGrath . . . ."); 71 ("Given McGrath's role as CFO . . . *there can be no sincere dispute* that McGrath received and was aware of the Flash Report . . . ."); 57 ("*[p]resumably*" the words "smaller audience" referred to McGrath (emphasis added)).

But speculation and supposition is not fact. It is well-settled that a complaint may not impute knowledge to a defendant solely on the basis of his position as an officer of a company. *See Bond Opportunity Fund v. Unilab Corp.*, 2003 WL 21058251, at \*4 (S.D.N.Y. May 9, 2003); *see also Lillian Knitting Mills Co. v. Earle*, 237 N.C. 97, 104 (1953) (holding that an officer "is not liable, merely because of his official character") (internal quotation marks & citation omitted). The Complaint lacks any non-conclusory allegations that McGrath knew any of the challenged statements was false. *See, e.g.*, Compl. ¶¶ 65-67, 80-83 (discussing emails between Messrs. Chirico and Spears, not McGrath, and a whistleblower letter allegedly sent to Avaya's Board of Directors, on which McGrath did not serve).

### 4.    *The Complaint Fails To Plead Reliance*

The fraud claim must be dismissed also because the Complaint fails to allege reliance *by any plaintiff*. The Complaint alleges that certain unidentified "Plaintiffs' predecessors in interest as applicable" "reli[ed] on Defendant's misrepresentations." Compl. ¶ 35 n.1. As noted above, *supra* pp. 10-12, there are no factual allegations supporting plaintiffs' legal conclusion that they are successors in interest; nor are there any allegations that identify which plaintiff became a successor in interest to which original investor and when. Without *any* supporting facts, the Court must reject the Complaint's conclusory assertion that plaintiffs' reliance rests on *some other* entities' state of mind.

Courts do not permit fraud claims based on "third-party reliance." *Alamance Fam. Prac., P.A. v. Lindley*, 2018 NCBC 82 ¶ 69 (N.C. Super. Ct. Aug. 14, 2018); *NNN Durham Off. Portfolio 1, LLC v. Highwoods Realty Ltd. P'ship,* 2013 NCBC 12 ¶ 94 (N.C. Super. Ct. Feb. 19, 2013), *aff'd*, 261 N.C. App. 185 (2018). The Complaint does not identify which plaintiffs, if any, heard and relied on the alleged misrepresentations and omissions. A plaintiff "cannot transfer [another party's] reliance" to serve as their own. *NNN Durham Off. Portfolio 1, LLC*, 2013 NCBC 12, ¶ 94. The Court must dismiss plaintiffs' fraud claim as to McGrath on this separate and independent ground.

## IV.    THE COMPLAINT FAILS TO STATE A FRAUDULENT OMISSION CLAIM AGAINST MCGRATH

Plaintiffs' claim of fraudulent omission in Count II should likewise be dismissed against McGrath. To plead fraud by omission with particularity, a plaintiff must allege:

> (1) the relationship [between plaintiff and defendant] giving rise to the duty to speak; (2) the event or events triggering the duty to speak and/or the general time period over which the relationship arose and the fraudulent conduct occurred; (3) the general content of the information that was withheld and the reason for its materiality; (4) the identity of those under a duty who failed to make such disclosures; (5) what [the defendant] gained by withholding information; (6) why plaintiff's reliance on the omission was both reasonable and detrimental; and (7) the damages proximately flowing from such reliance.

*Lawrence v. UMLIC-Five Corp.*, 2007 NCBC 20, ¶ 39 (N.C. Super. Ct. June 18, 2007) (internal quotation marks & citation omitted). The Complaint generally alleges that McGrath withheld his "exclusive knowledge" that "Avaya had no chance of meeting" its guidance and that "Avaya had in fact materially un[der]performed" prior to the

23

closing of the loan transaction on July 12, 2022. Compl. ¶ 108. These allegations are insufficient to state a fraudulent omission claim for a number of reasons.

First, there are no facts alleged to support the inference that, prior to July 12, 2022, McGrath had actual knowledge that "Avaya had no chance of meeting" its earnings guidance or that the company had materially underperformed. As set forth above, the Complaint contains no non-conclusory allegations that McGrath received any reliable information that Avaya would miss its earnings projections before July 12, 2022. To the contrary, the documents incorporated by reference in the Complaint make clear that Avaya's quarterly financial closing process was not yet concluded as late as July 28, 2022 when Avaya decided to withdraw its prior guidance. Ex. 7 at 7.

Second, the Complaint fails to allege McGrath was under any duty to disclose or update Avaya's earnings guidance. "North Carolina courts have been loath to impose an obligation of disclosure on commercial parties engaged in business negotiations." *Daniel Grp., Inc. v. Am. Sales & Mktg. Inc.*, 2016 NCBC 97, ¶ 41 (N.C. Super. Ct. Dec. 15, 2016); *see also Aym Techs., LLC v. Scopia Capital Mgmt. LP*, 2021 NCBC LEXIS 29, at *23 (N.C. Super. Ct. Mar. 31, 2021) ("Generally, commercial parties engaging in an arms-length transaction with one another do not have a duty to disclose."). In an attempt to plead around this crucial element of the fraudulent omission claim, the Complaint asserts (at ¶ 108) that "Defendants took affirmative steps to conceal from Plaintiffs" the earnings miss. But the Complaint alleges no facts to support this conclusion. *See Zagaroli v. Neill.*, 2016 NCBC LEXIS 106, ¶ 51 (N.C. Super. Ct. Dec. 29, 2016) (dismissing fraud claim for failure to "allege[] facts showing [specific] affirmative steps").

24

Moreover, when Avaya announced its earnings guidance, it expressly disclaimed any duty to update those financial projections. *See, e.g.*, Ex. 5 at 11. And courts have consistently declined to impose on corporations a duty to update financial projections. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1432 (3d Cir. 1997) (Alito, J.) (finding no duty to update for "ordinary, run-of-the-mill forecasts, such as [an] earnings projection"). Particularly relevant here, the *Burlington* court observed that "Companies are *not* obligated either to produce or disclose internal forecasts," and cautioned that imposing a duty to update earning guidance would "deter companies from providing this information." *Id.* Thus, the Court observed, "[a] judicially created rule that triggers a duty of continuous disclosure of all material information every time a single specific earnings forecast is disclosed would likely result in a drastic reduction in the number of such projections made by companies." *Id.* at 1433.

*Burlington*'s reasoning applies with force here. Plaintiffs have alleged nothing more than a classic case of fraud by hindsight, attaching a few emails that suggest some junior Avaya employees and officers—apart from McGrath—were concerned about Avaya's ability to meet its earnings guidance. Imposing a duty of disclosure in these circumstances—every corporation has employees with divergent opinions— would deter companies from ever providing earnings projections. *See In re Burlington*, 114 F.3d at 1432.

25

## V.    THE COMPLAINT FAILS TO STATE A NEGLIGENT MISREPRESENTATION CLAIM AGAINST MCGRATH

For similar reasons, the claim of negligent misrepresentation in Count III against McGrath must be dismissed.  "[T]he tort of negligent misrepresentation occurs when (1) a party justifiably relies (2) to his detriment (3) on information prepared without reasonable care (4) by one who owed the relying party a duty of care."  *Oliver v. Brown & Morrison, Ltd.*, 2022 NCBC 13 ¶ 84 (N.C. Super. Ct. Mar. 3, 2022) (internal quotation marks & citation omitted).  Under North Carolina law, "omissions cannot serve as a basis for a negligent misrepresentation claim." *Carmayer, LLC v. Koury Aviation, Inc.*, 2017 NCBC 80, ¶ 60 (N.C. Super. Ct. Sept. 11, 2017).

As set forth above, the Complaint fails to allege any actionable misrepresentation by McGrath.  *See supra* pp. 14-20; *Ausley v. Bishop*, 133 N.C. App. 210, 217-18 (1999) (negligent misrepresentation claim requires falsity); *Stavroff v. Meyo*, 987 F. Supp. 987, 1002 (N.D. Ohio 1995) (applying bespeaks caution doctrine to negligent misrepresentation claim).  The Complaint does not allege plaintiffs relied upon any alleged statements by McGrath.  *See supra* pp. 22-23; *NNN Durham Off. Portfolio*, 261 N.C. App. 185, 196-98 (2018) (disallowing negligent misrepresentation claim based on third-party reliance).  Moreover, the cautionary statements that accompanied the challenged forward-looking statements render any alleged misrepresentations inactionable and any purported reliance unreasonable.  *In re Royal Appliance Sec. Litig.*, 64 F.3d 663, at *4-5 (6th Cir. 1995) (unpublished table

26

decision) (affirming dismissal of negligent misrepresentation claims under bespeaks caution doctrine).

In addition, the Complaint fails to adequately allege that McGrath acted without reasonable care. Other than conclusory assertions, the Complaint alleges no facts that McGrath was negligent in repeating Avaya's corporate guidance. *See Bob Timberlake Collection, Inc. v. Edwards*, 176 N.C. App. 33, 40 (2006) (affirming dismissal of negligent misrepresentation claim for failure to allege facts showing lack of reasonable care). Plaintiffs appear to assert that McGrath is liable for negligent misrepresentation because he somehow *knew* Avaya's disclosures were false, but the Complaint does not, and cannot, plead that McGrath had such knowledge. *See supra* pp. 20-22. McGrath was "entitled to rely on information" provided by "officers or employees of the corporation whom" he reasonably "believe[d] to be reliable and competent." N.C. Gen. Stat. § 55-8-42(b). There are no allegations that McGrath *himself* negligently prepared the company's global financial forecast. Nor does the Complaint support any reasonable inference that McGrath lacked a basis to rely on the financial projections prepared by the company and its other officers and employees. Plaintiffs' negligent misrepresentation claim should be dismissed as to McGrath.

## CONCLUSION

The Court should dismiss plaintiffs' Complaint as to McGrath with prejudice.

27

This 22nd day of January, 2024.

/s/ David C. Wright, III
David C. Wright, III
N.C. Bar No. 11161
dwright@robinsonbradshaw.com
Adam K. Doerr
N.C. Bar No. 37807
adoerr@robinsonbradshaw.com
Ethan R. White
N.C. Bar No. 52456
ewhite@robinsonbradshaw.com

ROBINSON BRADSHAW
101 N. Tryon Street, Suite 1900
Charlotte, NC 28246
Telephone:  704.377.8352
Facsimile:  704.378.4000

Reid M. Figel (*pro hac vice*)
rfigel@kellogghansen.com
Minsuk Han (*pro hac vice*)
mhan@kellogghansen.com
Jordan R. G. González (*pro hac vice*)
jgonzalez@kellogghansen.com

KELLOGG, HANSEN, TODD,
   FIGEL & FREDERICK, P.L.L.C.
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone:  202.326.7900
Facsimile:  202.326.7999

*Attorneys for Defendant Kieran
McGrath*

28

## RULE 7.8 CERTIFICATION

I certify that the foregoing **BRIEF OF DEFENDANT KIERAN MCGRATH IN SUPPORT OF MOTION TO DISMISS COMPLAINT** is less than 7,500 words (as reported by the word-count feature of Microsoft Word) and is therefore in compliance with the length and formatting requirements set forth in BCR 7.8 of the North Carolina Business Court Rules.

This 22nd day of January, 2024.

/s/ David C. Wright, III
David C. Wright, III

29

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed this day using the Court's electronic filing system, which will automatically and electronically notify the Court and counsel of record as follows:

Melanie Black Dubis
Andrew P. Tabeling
Parker Poe Adams & Bernstein LLP
301 Fayetteville Street, Suite 1400
Raleigh, NC  27601
melaniedubis@parkerpoe.com
andytabeling@parkerpoe.com

*Attorneys for Plaintiffs*

Kenneth Lautenschlager
Austin R. Walsh
Johnston, Allison & Hord, P.A.
1065 East Morehead Street
Charlotte, NC  28204
klauten@jahlaw.com
awalsh@jahlaw.com

*Attorneys for Defendant James M. Chirico, Jr.*

Adam L. Ross
Jennifer M. Houti
James, McElroy and Diehl, P.A.
525 North Tryon Street, Suite 700
Charlotte, NC  28202
aross@jmdlaw.com
jhouti@jmdlaw.com

*Attorneys for Defendant Stephen D. Spears*

This 22nd day of January, 2024.

*/s/ David C. Wright, III*
David C. Wright, III

30