UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

OLIVER JIANG, individually and on behalf of all others similarly situated,

                Plaintiff,

- against -

JAMES M. CHIRICO, JR., and KIERAN J. McGRATH,

                Defendants.

**ORDER**

23 Civ. 1258 (PGG)

---

PAUL G. GARDEPHE, U.S.D.J.:

        This is a putative class action brought under federal securities laws on behalf of those who purchased or otherwise acquired securities of Avaya Holdings Corp. ("Avaya") between May 10, 2022 and December 15, 2022 (the "Class Period"). Plaintiffs Oliver Jiang and City of Pittsburgh Comprehensive Municipal Pension Trust Fund (together "Plaintiffs") have moved for an order modifying the discovery stay currently in place pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA") to allow Plaintiffs to obtain documents from Avaya and from plaintiffs in certain related state court actions.[1] Defendants James M. Chirico, Jr., and Kieran J. McGrath oppose the motion. (Dkt. Nos. 83, 85)

        For the reasons stated below, Plaintiffs' motion will be denied and the PSLRA discovery stay will remain in place.

---

[1] This Court appointed Paul Sweatt lead plaintiff on March 5, 2024, after the parties completed their briefing concerning the instant motion. (Dkt. No. 89) Sweatt moved to join the motion on March 8, 2024. (Dkt. No. 90)

# BACKGROUND

I. **FACTS**

    A. **The Amended Complaint**

Avaya is a public company headquartered in Durham, North Carolina.  Defendant James M. Chirico, Jr. is the former chief executive officer of Avaya.  (Am. Cmplt. (Dkt. No. 93) ¶ 22)  Defendant Kieran J. McGrath is Avaya's chief financial officer.  (Id. ¶ 23)

Avaya provides "digital communications products, solutions and services for businesses" and "deliver[s] its technology predominantly through software and services."  (Id. ¶ 24) (quotation marks omitted).  During the Class Period, "Avaya was in the midst of transforming from a traditional telecommunications hardware company into a software and services company."  (Id. ¶ 25)  Avaya had

> shifted its entire "comprehensive software portfolio to Avaya OneCloud," a cloud-based communications solution, which offered "significant capabilities across contact center (OneCloud CCaaS), unified communications and collaboration (OneCloud UCaaS), and communications platform as a service (OneCloud CPaaS)."  Through its OneCloud software, Avaya could offer organizations a "single app for all-channel calling, messaging, meetings, and team collaboration with the same ease of use as existing consumer apps."
>
> Avaya's growth strategy was predicated on OneCloud, as a "key focus[]" for the Company was "increasing [its] recurring revenue – revenue from products and services that are delivered pursuant to multi-period contracts, including recurring subscription-based software revenue, maintenance, global support services and enterprise cloud and managed services."

(Id. ¶¶ 25-26) (footnotes omitted)

The Amended Complaint alleges that in certain public statements issued in May 2022 and June 2022, Defendants Chirico and McGrath

> misled investors into believing the Company was successfully transforming itself from a traditional office hardware business into a subscription-based software company by claiming that the momentum of Avaya's new business model "remain[ed] very strong" and the Company was on track to earn at least $685 million in revenue and EBITDA of $140 million in the third quarter fiscal year

2

2022 and $1 billion in annual recurring revenues by the end of the calendar year 2022.

(Id. ¶ 2)

The Amended Complaint alleges that "Avaya's business model was doomed to fail as the Company was experiencing a declining pipeline of existing legacy customers (with expiring maintenance contracts) eligible for migration to the Company's subscription product, 'OneCloud.'" (Id.)  The Amended Complaint further alleges that Defendants Chirico and McGrath "knew Avaya was not on track to meet its Q3 2022 and FY 2022 guidance." According to Plaintiffs, (1) "immediately prior to announcing the guidance, Avaya executives and other employees warned that the projections would be 'impossible' to meet," and (2) "before the end of Q3 2022, Avaya executives and employees discussed how closing the 'quite substantial' gap between the Company's actual performance and the publicly stated projections would require 'more than one miracle.'" (Id.)

According to the Amended Complaint, between July 2022 and December 2022 the Company made several corrective disclosures in which the truth regarding its financial condition was revealed.  (Id. ¶¶ 6-12)  During the Class Period, "Avaya stock price fell nearly 97% from its close of $7.53 on May 10, 2022 to its closing price of $0.24 per share on December 16, 2022, erasing nearly $613.5 million in market capitalization."  (Id. ¶ 14)  Avaya filed for Chapter 11 bankruptcy in February 2023.  (Id. ¶ 15)

**B.      The State Court Actions**

On October 26, 2023, Avaya's lenders and purchasers of Avaya convertible notes filed actions against Defendants Chirico and McGrath in North Carolina Superior Court (the "State Court Actions").

3

In Brigade Cavalry Fund Ltd. v. Chirico, No. 23CV031948-590 (N.C. Super. Ct. Mecklenburg Cnty. Oct. 26, 2023) (the "Brigade Action"), the plaintiff investment funds allege that Chirico and McGrath "induced the Funds to purchase in excess of $110 million of near-worthless convertible notes issued by Avaya" by making several false or misleading statements about Avaya's financial condition in May, June, and July 2022. (Brigade Action Cmplt., Ellman Decl., Ex. A (Dkt. No. 81-1) ¶¶ 1-4)

In ALCOF III NUBT, L.P. v. Chirico, No. 23CV031985-590 (N.C. Super. Ct. Mecklenburg Cnty. Oct. 26, 2023) (the "ALCOF Action"), plaintiffs similarly allege that Defendants Chirico and McGrath "duped Plaintiffs into loaning $236 million to Avaya under a term loan . . . that closed only two weeks before Avaya publicly announced that the financial information used to market the [term loan] was false and 'should no longer be relied upon.'" (ALCOF Action Cmplt., Ellman Decl., Ex. B (Dkt. No. 81-2) ¶ 2)

The complaints in the State Court Actions quote at length from Avaya internal emails, and in certain instances incorporate actual images of the emails. (See Brigade Action Cmplt., Ellman Decl., Ex. A (Dkt. No. 81-1) ¶¶ 73-75, 77-78, 81-83; ALCOF Action Cmplt., Ellman Decl., Ex. B (Dkt. No. 81-2) ¶¶ 56-60, 62, 65-67, 80-82) Plaintiffs in the instant action contend that plaintiffs in the State Court Action obtained these emails directly from Avaya, after the Company emerged from bankruptcy in May 2023. (Pltf. Br. (Dkt. No. 80) at 16)[2] Plaintiffs go on to allege that "Avaya has favored certain bond purchasers – including those who sit on its board . . . by providing them documents." (Id.)

---

[2] The Amended Complaint – filed after Plaintiffs made the instant motion – cites to many of the same emails and incorporates by reference the allegations made in the two North Carolina complaints. (Am. Cmplt. (Dkt. No. 93) ¶¶ 55-60, 62-64, 66-76)

4

In support of this assertion, Plaintiffs state that certain plaintiffs in the State Court Actions control the right to appoint a majority of Avaya's board of directors. Plaintiffs further note that several plaintiffs in the State Court Actions were members of two ad hoc groups that represented investors in Avaya's bankruptcy proceedings. (See Verified Statement of Paul, Weiss Ad Hoc Group, Ellman Decl., Ex. C (Dkt. No. 81-3) at 9 (Nuveen Asset Management, LLC ("Nuveen"), plaintiff in the ALCOF Action); Verified Statement of Akin Gump Ad Hoc Group, Ellman Decl., Ex. D (Dkt. No. 81-4) at 6-7 (Apollo Advisors X, L.P. ("Apollo"), plaintiff in the ALCOF Action; Brigade Capital Management, LP ("Brigade"), affiliate of several plaintiffs in the Brigade Action)

When Avaya emerged from bankruptcy on May 1, 2023, the reorganized company's board of directors consisted of nine members. (Avaya Governance Term Sheet, Ellman Decl., Ex. E (Dkt. No. 81-5) at 4) Pursuant to the Bankruptcy Court's plan of reorganization, Apollo had the right to appoint three directors, while Brigade and Nuveen each had the right to appoint one director. (Id.) Accordingly, Apollo, Brigade, Nuveen together had the right to appoint a majority of the board. Representatives from Apollo, Brigade, Nuveen, and Sculptor Capitol LP[3] also formed a board selection committee empowered to appoint an additional three independent directors. (Id. at 4-5)

The reorganized company's board of directors now includes two Apollo partners and the managing partner of Brigade. (Members of the New Board, Ellman Decl., Ex. F (Dkt. No. 81-6) at 2-4)

---

[3] Plaintiffs contend that Sculptor Capitol LP is affiliated with Sculptor Special Master Fund, Ltd., a plaintiff in the ALCOF Action. (Pltf. Br. (Dkt. No. 80) at 11)

On January 22, 2024, Defendant McGrath moved to dismiss the State Court Actions. In his motions, McGrath argues, inter alia, that venue is improper in North Carolina and that the two complaints fail to state a claim. (Brigade Action, McGrath MTD Br., Han Decl., Ex. 1 (Dkt. No. 84-1) at 8-9; ALFOC Action, McGrath MTD Br., Han Decl., Ex. 2 (Dkt. No. 84-2) at 7-8) In a February 16, 2024 order, the court in the State Court Actions stayed discovery pending resolution of the motions to dismiss. (Consolidated State Court Actions, Feb. 16, 2024 Order, Han Decl., Ex. 3 (Dkt. No. 84-3) at 4)

Defendant McGrath states that – prior to the February 16, 2024 discovery stay – "Avaya made a document production to the Brigade plaintiffs pursuant to a subpoena issued in that case." McGrath further states that "the ALCOF plaintiffs have received a document production from Avaya pursuant to a subpoena issued on February 1, 2024." (McGrath Opp. Br. (Dkt. No. 83) at 8 n.2) McGrath states that – except for these productions – "no discovery has been produced in the State [Court] Actions." (Id.)

## II.   PROCEDURAL HISTORY

Plaintiff Jiang filed the Complaint on February 14, 2023, naming Avaya, Chirico, and McGrath as defendants. (Dkt. No. 1)

On February 16, 2023 – after Avaya filed a bankruptcy petition – Plaintiff Jiang moved to voluntarily dismiss his claims against Avaya. (Dkt. No. 6)

On March 6, 2023, nine parties – including Plaintiff City of Pittsburgh Comprehensive Municipal Pension Trust Fund – filed motions to be appointed lead plaintiff. (Dkt Nos. 10, 13, 17, 19, 22, 27, 31, 34, 40)

On March 23, 2023, this Court "so ordered" a stipulation staying all discovery pursuant to the PSLRA pending the Court's appointment of lead plaintiff and resolution of any subsequent motions to dismiss. (Dkt. No. 59)

6

Plaintiffs filed the instant motion to lift the PSLRA discovery stay on February 2, 2024.  (Dkt. No. 79)  Defendants McGrath and Chirico filed opposition briefs on February 16, 2024.  (Dkt. Nos. 83, 85)  Plaintiffs filed a reply brief on February 28, 2024.  (Dkt. No. 88)

This Court appointed Paul Sweatt lead plaintiff on March 5, 2024.  (Dkt. No. 89)  Sweatt moved to join the instant motion on March 8, 2024.  (Dkt. No. 90)

Sweatt filed the Amended Complaint on May 6, 2024.  (Dkt. No. 93)  The parties are currently briefing Defendants' motions to dismiss.

## DISCUSSION

Plaintiffs seek an order lifting the PSLRA discovery stay to allow them to obtain "(i) documents Avaya produced, shared, or otherwise provided to the State Court Plaintiffs; and (ii) documents that those plaintiffs received from Avaya in connection with the drafting and prosecution of the State Court Actions."  (Pltf. Reply Br. (Dkt. No. 88) at 11)[4]

Plaintiffs contend that they are "at a significant disadvantage" in the instant action because, "pursuant to Avaya's Chapter 11 plan of reorganization, certain plaintiffs in the State Court Actions appear to collectively control [the] reorganized Avaya's board of directors."  (Pltf. Br. (Dkt. No. 80) at 5)  Based on the factual allegations in the October 2023 complaints filed in the State Court Actions – which include internal Avaya emails – Plaintiffs contend that the "reorganized Avaya is favoring the plaintiffs in the State Court Actions by providing them access to internal documents."  (Id.)  Because Plaintiffs' "source of recovery is primarily limited to the proceeds of Avaya's directors and officers liability insurance" as it relates to Defendants McGrath and Chirico – who are also defendants in the State Court Actions – "it is critical that

---

[4] Plaintiffs see these two categories as comprising "the same set of documents."  (Pltf. Reply Br. (Dkt. No. 88) at 11 n.8)

7

Plaintiffs in [the instant action] are provided the same access to those documents to place them on an equal playing field with the plaintiffs in the State Court Actions." (Id.)  Plaintiffs further contend that their request "is particularized, will not burden Defendants, Avaya, or the plaintiffs in the State Court Actions, and is consistent with the policies underlying the PSLRA." (Id.)

In opposing Plaintiffs' motion to lift the discovery stay, Defendants McGrath and Chirico contend that Plaintiffs' request for documents is not particularized and that they have not shown that they will suffer undue prejudice if the stay is not lifted.  (McGrath Opp. Br. (Dkt. No. 83) at 5; Chirico Opp. Br. (Dkt. No. 85) at 5-6)

I.      **LEGAL STANDARD**

The PSLRA provides that "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party."  15 U.S.C. § 78u-4(b)(3)(B).  The PSLRA creates "a strong presumption that no discovery should take place until a court has affirmatively decided that a complaint does state a claim under the securities laws, by denying a motion to dismiss."  Podany v. Robertson Stephens, Inc., 350 F. Supp. 2d 375, 378 (S.D.N.Y. 2004) (emphasis in original).  In order to obtain an order lifting the PSLRA discovery stay, a plaintiff's discovery requests must be "particularized" and the discovery sought must be necessary to "(1) preserve evidence[] or (2) prevent undue prejudice to plaintiffs."  In re Smith Barney Transfer Agent Litig., No. 05 CIV. 7583 (WHP), 2006 WL 1738078, at *1 (S.D.N.Y. June 26, 2006)

"A request is considered 'particularized' for purposes of the PSLRA when 'it is directed at specific persons' and 'identifies specific types of evidence that fall within its scope.'"  Mori v. Saito, 802 F. Supp. 2d 520, 523 (S.D.N.Y. 2011) (quoting Fisher v. Kanas, No. 06-CV-1187(ADS)(ETB), 2006 WL 2239038, at *2 (E.D.N.Y. Aug. 4, 2006)); see also In re

8

WorldCom, Inc. Sec. Litig., 234 F. Supp. 2d 301, 306 (S.D.N.Y. 2002) (lifting PSLRA discovery stay with respect to a "clearly defined universe of documents").

Courts in this District have construed "undue prejudice" to mean "'improper or unfair treatment amounting to something less than irreparable harm,'" In re Vivendi Universal, S.A. Sec. Litig., 381 F. Supp. 2d 129, 130 (S.D.N.Y. 2003) (quoting Vacold LLC v. Cerami, No. 00 CIV. 4024 (AGS), 2001 WL 167704, at *6 (S.D.N.Y. Feb. 16, 2001)), and have stated that "'exceptional circumstances'" must exist in order to justify lifting the stay. In re AOL Time Warner, Inc. Sec. Litig., No. 02 CIV. 5575(SWK), 2003 WL 21729842, at *1 (S.D.N.Y. July 25, 2003) (quoting Vacold, 2001 WL 167704, at *6). "Courts in the Southern District have partially lifted the discovery stay on the ground of 'undue prejudice' when defendants would be unfairly shielded from liability through pursuit of their pending action or when plaintiffs would be placed at an unfair advantage to make informed decisions about litigation and settlement strategy without access to documents that form the core of the proceeding." In re Vivendi, 381 F. Supp. 2d at 130 (citing In re WorldCom, 234 F. Supp. 2d at 306).

## II. ANALYSIS

Plaintiffs do not contend that a lifting of the stay is necessary in order to preserve evidence. (See Pltf. Br. (Dkt. No. 80) at 14-19) Accordingly, the two issues in dispute are whether Plaintiffs' discovery requests are "particularized" and whether Plaintiffs have demonstrated that they will suffer "undue prejudice" if the stay is not lifted.

### A. Whether Plaintiffs' Discovery Requests are Particularized

In their discovery requests, Plaintiffs seek "(i) documents Avaya produced, shared, or otherwise provided to the State Court Plaintiffs; and (ii) documents that those plaintiffs received from Avaya in connection with the drafting and prosecution of the State Court

9

Actions."[5]  (Pltf. Reply Br. (Dkt. No. 88) at 11)  Plaintiffs acknowledge that "these requests are presumably for the same set of documents," and explain that they "want[] to be careful to ensure that they ultimately receive the documents that are in the hands of the State Court Plaintiffs." (Id. at 11 n.8)

In connection with their first discovery request, Plaintiffs surmise that Avaya provided documents to plaintiffs in the State Court Actions because (1) the complaints in the State Court Actions quote from internal Avaya emails; and (2) as a result of the Bankruptcy Courts' plan of reorganization, certain plaintiffs in the State Court Actions have the right to appoint a majority of the directors serving on Avaya's board, suggesting that the reorganized company might have a motive to cooperate with plaintiffs in the State Court Actions. Defendants have offered no evidence that contradicts or undermines Plaintiffs' inference.

Plaintiffs' second discovery request addresses two productions that Avaya made to plaintiffs in the State Court Actions before discovery was stayed on February 16, 2024. Defendant McGrath states that on December 18, 2023, "Avaya made a document production to the Brigade plaintiffs pursuant to a subpoena issued in that case," and that "the ALCOF plaintiffs have received a document production from Avaya pursuant to a subpoena issued on February 1, 2024."  (McGrath Opp. Br. (Dkt. No. 83) at 8 n.2)

In sum, Plaintiffs seek (1) any documents that Avaya provided to plaintiffs in the State Court Actions prior to the filing of those lawsuits; and (2) documents Avaya provided in

---

[5]  In their opening brief, Plaintiffs state that they will seek additional "documents from [Defendants Chirico and McGrath] and [Stephen D. Spears, Avaya's former Chief Revenue Officer,] to the extent they produce any documents to the plaintiffs in the State Court Actions in the future."  (Pltf. Br. (Dkt. No. 80) at 17 n.13)  In their reply brief, Plaintiffs say that they are "no longer pursuing those documents via the instant motion."  (Pltf. Reply Br. (Dkt. No. 88) at 11)

10

Brigade and ALCOF in December 2023 and February 2024, respectively. As such, Plaintiffs have requested a "closed universe of materials," Courter v. CytoDyn, Inc., No. C21-5190 BHS, 2022 WL 621535, at *2 (W.D. Wash. Mar. 3, 2022), and have not made an unbounded request for "all documents, testimony and transcripts that have been previously produced or will be produced in the future" in the State Court Actions. Faulkner v. Verizon Commc'ns, Inc., 156 F. Supp. 2d 384, 404 (S.D.N.Y. 2001).

While Defendants assert that Plaintiffs should have provided a more specific "description of [the] documents" requested (McGrath Opp. Br. (Dkt. No. 83) at 11), no such showing is necessary. Courts in this district and elsewhere have found that discovery requests are sufficiently particularized under the PSLRA when they refer to prior document productions from parallel civil cases or government investigations. See In re WorldCom, 234 F. Supp. 2d at 304, 306 (lifting PSLRA discovery stay to permit production of "a clearly defined universe of documents" including "copies of documents and materials that WorldCom produced in connection with governmental investigations of its accounting and business practices"); In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig., No. 09 MDL 2058 (DC), 2009 WL 4796169, at *1 (S.D.N.Y. Nov. 16, 2009) (lifting PSLRA discovery stay as to "documents that the defendants have produced, or will produce, to various government agencies (including the SEC, Congress, the New York Attorney General, and the North Carolina Attorney General"); Waldman v. Wachovia Corp., No. 08 CIV. 2913(SAS), 2009 WL 86763, at *1 (S.D.N.Y. Jan. 12, 2009) (ruling that discovery request was sufficiently particularized where it was "limited to a set of documents already provided to state and federal regulators"); In re Royal Ahold N.V. Sec. & Erisa Litig., 220 F.R.D. 246, 250 (D. Md. 2004) ("[A] request for documents previously produced in connection with internal and external investigations is

11

particularized within the meaning of the PSLRA."); Pension Tr. Fund for Operating Engineers v. Assisted Living Concepts, Inc., 943 F. Supp. 2d 913, 915 (E.D. Wis. 2013) (finding discovery request sufficiently particularized where it was "limited solely to relevant materials that have already been produced in other proceedings").

This Court concludes that Plaintiffs' discovery requests are sufficiently "particularized" for purposes of the PSLRA. 15 U.S.C. § 78u-4(b)(3)(B).

### B. Whether Plaintiffs Have Demonstrated that they Will Suffer Undue Prejudice if the PSLRA Discovery Stay Is Not Lifted

As to prejudice, Plaintiffs argue that they are at an informational disadvantage vis a vis plaintiffs in the State Court Actions because "Avaya has favored certain bond purchasers – including those who sit on its board – over the Class by providing them documents." (Pltf. Br. (Dkt. No. 80) at 16) According to Plaintiffs, Avaya has "used Chapter 11 bankruptcy protection as both a sword to allow its directors to pursue claims against Chirico and McGrath, and a shield to protect itself from litigation by Plaintiffs." (Id.) Plaintiffs argue that this concern is particularly acute here, because "Avaya is not a party to [the instant action] due to its bankruptcy and, therefore, any potential recovery is limited to Chirico, McGrath, and whatever insurance policies and coverage are available to them." (Id. at 15) Because Avaya has allegedly provided documents to plaintiffs in the State Court Actions, Plaintiffs contend that they are "prejudiced by their 'inability to make informed decisions about . . . litigation strategy in a rapidly shifting landscape.'" (Id. (quoting In re WorldCom, 234 F. Supp. 2d at 305)

Defendants do not dispute that any recovery here would likely be limited to the funds available from Chirico and McGrath's director and officer insurance policies. (McGrath Opp. Br. (Dkt. No. 83) at 13-16; Chirico Opp. Br. (Dkt. No. 85) at 11-12) Accordingly, it

12

appears that Plaintiffs may well be in competition with plaintiffs in the State Court Actions for a limited pool of funds.

Plaintiffs have not shown, however, a sufficiently imminent prospect of harm such that they will suffer "undue prejudice" under the PSLRA if the PSLRA discovery stay is not lifted. As in the instant action, discovery in the State Court Actions has been stayed pending resolution of motions to dismiss. (Consolidated State Court Actions, Feb. 16, 2024 Order, Han Decl., Ex. 3 (Dkt. No. 84-3) at 4) Accordingly, "[d]iscovery is [not] moving apace in parallel litigation," such that Plaintiffs' "pursuit of discovery will . . . fall substantially behind" the efforts made by plaintiffs in the State Court Actions. In re Bank of Am., 2009 WL 4796169, at *3 (internal citation and quotation marks omitted).

Moreover, the "inability to gather evidence for settlement negotiations or to plan a litigation strategy" – without more – "is not evidence of undue prejudice." In re Refco, Inc., No. 05 CIV. 8626 (GEL), 2006 WL 2337212, at *2 (S.D.N.Y. Aug. 8, 2006). "[D]elay is an inherent part of every stay of discovery required by the PSLRA." In re Smith Barney Transfer Agent Litig., No. 05 CIV. 7583 (WHP), 2006 WL 1738078, at *2 (S.D.N.Y. June 26, 2006) (quoting In re Initial Pub. Offering Sec. Litig., 236 F. Supp. 2d 286, 287 (S.D.N.Y. 2002)). Indeed,

> [w]hether PSLRA plaintiffs should be subjected to a discovery stay while other parties, who are bringing claims under other causes of action, are not subjected to a stay is a question for Congress, and one that Congress has answered. Under the PSLRA, discovery in this action has been stayed. That stay does not apply to government investigations, bankruptcy proceedings, internal investigations, or non-PSLRA actions. The discrepancy between PSLRA actions and other actions is not evidence of undue prejudice, but rather is evidence of Congress's judgment that PSLRA actions should be treated differently than other actions.

In re Refco, Inc., 2006 WL 2337212, at *2.

Moreover, there is no evidence here that the parties to the State Court Actions are engaged in settlement discussions that – if successful – would limit or exhaust the pool of funds

appears that Plaintiffs may well be in competition with plaintiffs in the State Court Actions for a limited pool of funds.

Plaintiffs have not shown, however, a sufficiently imminent prospect of harm such that they will suffer "undue prejudice" under the PSLRA if the PSLRA discovery stay is not lifted. As in the instant action, discovery in the State Court Actions has been stayed pending resolution of motions to dismiss. (Consolidated State Court Actions, Feb. 16, 2024 Order, Han Decl., Ex. 3 (Dkt. No. 84-3) at 4) Accordingly, "[d]iscovery is [not] moving apace in parallel litigation," such that Plaintiffs' "pursuit of discovery will . . . fall substantially behind" the efforts made by plaintiffs in the State Court Actions. In re Bank of Am., 2009 WL 4796169, at *3 (internal citation and quotation marks omitted).

Moreover, the "inability to gather evidence for settlement negotiations or to plan a litigation strategy" – without more – "is not evidence of undue prejudice." In re Refco, Inc., No. 05 CIV. 8626 (GEL), 2006 WL 2337212, at *2 (S.D.N.Y. Aug. 8, 2006). "[D]elay is an inherent part of every stay of discovery required by the PSLRA." In re Smith Barney Transfer Agent Litig., No. 05 CIV. 7583 (WHP), 2006 WL 1738078, at *2 (S.D.N.Y. June 26, 2006) (quoting In re Initial Pub. Offering Sec. Litig., 236 F. Supp. 2d 286, 287 (S.D.N.Y. 2002)). Indeed,

> [w]hether PSLRA plaintiffs should be subjected to a discovery stay while other parties, who are bringing claims under other causes of action, are not subjected to a stay is a question for Congress, and one that Congress has answered. Under the PSLRA, discovery in this action has been stayed. That stay does not apply to government investigations, bankruptcy proceedings, internal investigations, or non-PSLRA actions. The discrepancy between PSLRA actions and other actions is not evidence of undue prejudice, but rather is evidence of Congress's judgment that PSLRA actions should be treated differently than other actions.

In re Refco, Inc., 2006 WL 2337212, at *2.

Moreover, there is no evidence here that the parties to the State Court Actions are engaged in settlement discussions that – if successful – would limit or exhaust the pool of funds

available to the Class. Even if such evidence did exist, the mere fact that settlement discussions involving the same defendants are taking place "does not create the 'undue prejudice' necessary to lift the stay." In re Refco, Inc., No. 05 CIV. 8626 (GEL), 2006 WL 2337212, at *3 (S.D.N.Y. Aug. 8, 2006). "If the stay of discovery mandated by the PSLRA were lifted every time a third party, not subject to the stay, was engaged in settlement discussions with the defendant, then the 'undue prejudice' provision would essentially eviscerate the stay requirement." Id.; see also In re AOL Time Warner, Inc. Sec., No. 02 CIV. 5575(SWK), 2003 WL 21729842, at *1 (S.D.N.Y. July 25, 2003) (finding that "assertions of an impending settlement that could prejudice plaintiffs' possible recovery are premature" where settlement discussions were merely "on-going"); 380544 Canada, Inc. v. Aspen Tech., Inc., No. 07 CIV. 1204(JFK), 2007 WL 2049738, at *3 (S.D.N.Y. July 18, 2007) ("[T]he mere possibility that Plaintiffs could be prejudiced if settlement talks ensue in the future between the Individual Defendants and the SEC is not enough for the Court to find that Plaintiffs will suffer undue prejudice as a result of the discovery stay.").

In sum, "[m]ere speculation about highly contingent possibilities of future prejudice does not demonstrate that lifting the [PSLRA discovery] stay is 'necessary . . . to prevent undue prejudice,' that would otherwise result." In re Refco, 2006 WL 2337212, at *3.

The cases cited by Plaintiffs are not to the contrary. (See Pltf. Br. (Dkt. No. 80) at 15-17) In WorldCom, 234 F. Supp. 2d 301, Judge Cote had previously ordered the securities plaintiffs and plaintiffs in a related ERISA action to prepare for coordinated settlement discussions. Id. at 305. Because the ERISA plaintiffs were not subject to a discovery stay, the PSLRA plaintiffs "would be severely disadvantaged in those discussions if they [were] denied

14

access to the documents [at issue]." Id. at 306.  Here, there is no comparable prospect of court-ordered settlement discussions.

In other cases cited by Plaintiffs, defendants had already reached settlements with other parties.  See Waldman, 2009 WL 86763, at *1 (finding undue prejudice where "plaintiffs must determine whether to continue with this case despite the settlement reached between defendants and the SEC, which will afford some compensation to the plaintiff class"); In re LaBranche Sec. Litig., 333 F. Supp. 2d 178, 181, 183-84 (S.D.N.Y. 2004) (finding undue prejudice where "the SEC and NYSE announced the initiation and settlement of enforcement actions against" the defendant and where "[t]he requested discovery is essential to determine [plaintiffs'] strategy and to assist in formulating an appropriate settlement demand"); In re Delphi Corp., No. 05-MD-1725, 2007 WL 518626, at *7 (E.D. Mich. Feb. 15, 2007) (finding undue prejudice because "settlements have already occurred in the SEC case and settlement discussions are ongoing in the bankruptcy action").  No comparable settlements have taken place here.[6]

The Court concludes that Plaintiffs have not demonstrated that the requested discovery is "necessary to . . . prevent undue prejudice" pursuant to the PSRLA.  15 U.S.C. § 78u-4(b)(3)(B).

---

[6] Plaintiffs note that on February 1, 2023, a group of investors who purchased debt issued by Avaya during the Class Period issued a New York state court summons seeking damages "to redress a massive fraud that Avaya's directors and officers perpetrated on investors in the Company's debt."  (Summons, A6 Capital Management LP et. al v. Chirico, No. 650626/2023 (Sup. Ct. N.Y. Cnty. Feb. 1, 2023) (the "A6 Action"), Ellman Decl., Ex. G (Dkt. No. 81-7) at 3)  The summons names Chirico, McGrath, and several other former Avaya officers and directors as defendants.  (Id.)  The A6 Action plaintiffs voluntarily discontinued their action about three months later, on May 3, 2023.  (Amended Notice of Discontinuance, A6 Action, Ellman Decl., Ex. H (Dkt. No. 81-8) at 3)  While Plaintiffs speculate that the A6 action was discontinued because the parties "reached a settlement" (Pltf. Br. (Dkt. No. 80) at 15-16 n.12), their speculation provides no basis for this Court to make a finding of undue prejudice.

**CONCLUSION**

For the reasons stated above, Plaintiffs' motion to lift or modify the PSLRA discovery stay is denied.

The Clerk of Court is directed to terminate the motion (Dkt. No. 79).

Dated: New York, New York
       June 24, 2024

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge